MARIA J. LEE AND OTHERS v. SAMUEL SMITH AND OTHERS.

Although, in some respects, there exists the fiction at civil law, that the heir and the ancestor are the same person, yet the heir, during the life of the ancestor, has no such vested right in his property as cannot be affected or divested by . act of Legislation which, prior to the death of the ancestor, changes the order of descent and vests it in others, or gives them a distributive share with the heir as previously recognized, or which would exclude another heir, whose disability from alienage has been removed by naturalization, from claiming a share of the succession.

In other words, the *status* of heirship is fixed by the law in force at the death of the ancestor, without reference to the *status* at any other period ; and whether some of the heirs might or might not have been disabled, had the an-

cestor died before the change of the law, or the change of the *status* by the heir
himself becoming naturalized, &c.

The law, as it existed at the death of John W. Smith (1845), vested his estate
in his children.   The statute does not discriminate between the children of
different marriages.

In Spanish law, the consort who enters into matrimony in ignorance that her
husband has a partner or wife living, (or of other impediment to the marri-
age,) is in law not only innocent of crime, but has all the rights, incidents
and privileges pertaining to lawful marriage ; and these are continued as
long there is ignorance of the former, or other impediment to the second mar-
riage.

A putative marriage in the Spanish law, that is where an impediment exists
which is unknown to one of the partners, becomes a real marriage by the
removal of the impediment.

Where portions of the estate of a deceased person are sold by order of Court for
the support of certain of the heirs, such heirs are chargeable, in making par-
tition of the estate, not with the value of such property at the time of the
partition, but with the proceeds of the sale and interest thereon.

The statute is too plain to leave any room for doubt or construction, that where
a deceased person leaves brothers of the whole and brothers of the half blood,
the latter inherit half as much as the former.

Appeal from Bexar.    Tried below before the Hon. Thomas
J. Devine.

The only fact of any importance, not distinctly stated in the
Opinion is, that the present value of certain real property
which had been sold for the support of the appellants by order
of the Probate Court, was reported by the Commissioners, and
the appellees claimed that the appellants were justly charge-
able therewith ;  whereas the Court below decided that the
appellants were only chargeable with the proceeds of the sale
of said property and interest thereon ;  to which appellees ex-
cepted.

*Hewitt & Newton*, for appellants.

*I. A. & G. W. Paschal*, for appellees.

HEMPHILL, CH. J.    The substance of the important facts in
his case is, that Wm. W. Smith married Harriet Stone in

Missouri in 1822, by whom he had three children before 1828. He then abandoned his wife, came to Texas, and under the name of John W. Smith, in 1831 or 1832, married according to the laws of the land Maria Jesusa Delgado in San Antonio. The marriage was entered into and continued in good faith by the said Maria Jesusa Delgado, or in other words she was from the first and continued to remain in ignorance of the prior marriage of her husband, or rather of the existence of the first wife.   Harriet Stone, the Missouri wife, obtained a divorce, said in one of the briefs to be before 1833.  She and her children removed to Texas in 1839.   Smith continued to live with his last wife up to the time of his death in 1845.  A large estate was acquired during the existence of this last community, all of which was common property, neither Smith nor his wife bringing anything into the community.

This is a suit in effect by the children of the first marriage, for a partition and distribution of this property between them and the wife and children of the second marriage, or the survivors of them.   There was a decree for partition, recognizing in effect the right of the second wife to one-half, and the children of both marriages to the other half of the property.   There were cross-appeals.   The defendants below (who may be styled —— appellants) in a very ingenious and elaborate argument, assert by counsel the proposition that the appellees (the children by the first wife) are not entitled to any share of the estate of their father, the deceased John W. Smith ; that at the time of the Texas marriage, the appellees were aliens, had no inheritable blood, and could not have been heirs to John W. Smith in Texas ;  that the issue of the Texas marriage were forced heirs of their father ;  that their rights reverted back and vested from the date of the marriage, and no subsequent act of the appellees could so divest these rights as to enable them (the children of the first marriage) to come in as joint heirs and copartners of their father's estate.

The proposition attempted to be maintained, rests upon the

supposed principle, that under the Civil Law and the laws of Spain, the ancestor and the heir were in effect the same person ; that the estate did not properly descend upon the heir, but continued the same with its rights, duties and obligations ; that during the life of the ancestor, the heir had such a vested right in the succession as could not be divested by acts of legislation, or, as in this case, by law and naturalization imparting to others the right of heirship. This subject was discussed several years since in Hill & Wife v. Phillips et al., 3 Tex. R. 397, by the great intellects of General Baker and Judge Webb, in one of the most profound, comprehensive and masterly arguments ever addressed to this Court. The verdict in that case being such as not to authorize the District Court to pronounce final judgment, the case went off on that error, and there was no expression of opinion on the point so luminously discussed. Nor, in the circumstances under which this Term is hastening to its close, is it possible to treat the subject with the fulness to which the Court is invited by the argument of counsel. For the present, we can only express the opinion that the right of heirship depends on the *status* of the person claiming at the time of the decease of the person whose estate is claimed ; that although, in some respects, there exists the fiction at Civil Law, that the heir and the ancestor are the same person, yet the heir, during the life of the ancestor, has no such vested right in his property as cannot be affected or divested by act of legislation which, prior to the death of the ancestor, changes the order of descent, and vests it in others, or gives them a distributive share with the heirs as previously recognized, or which would exclude another heir whose disability from alienage has been removed by naturalization, from claiming a share of the succession. In other words, the *status* of heirship is fixed by the law in force at the death of the ancestor, without reference to the *status* at any other period ; and whether some of the heirs may or may not have been disabled, had the ancestor died before the change of

the law, or the change of the *status* by the heir himself becoming naturalized, &c.

The law, as it existed at the death of John W. Smith, vested his estate in his children. The Statute does not discriminate between the children of different marriages ; and if it had, the settlement of successions would have been involved in increased perplexities. The appellees were his children by a legitimate marriage. They were not aliens at the time of his death, and if they had been, nine years would have been allowed them to claim their share of the property. There was no error in refusing instructions asserting an exclusive right in the appel· lants to the whole of the estate.

The appellants also, both mother and children, were entitled to the share allotted to them in the estate, not, as supposed by counsel for appellees, on the statutory rule that the issue in marriages deemed null in law shall be legitimate. (Hart. Dig. Art. 586.) This would be sufficient for the children at least, were it necessary for them to invoke this provision to secure their rights. But the second marriage of Smith with Maria Jesusa Delgado was not null and void in law, with reference either to the wife or the children of that marriage. In Spanish Law, such marriage is designated as putative, and the consort who enters into such matrimony ignorant that her partner has a wife or husband living, is in law not only innocent of crime, but has all the rights, incidents and privileges pertaining to lawful marriage, and these are continued as long as there is ignorance of the former, or of impediment to the second marriage. This putative was converted into a real marriage after the removal of the impediment by the divorce obtained at the instance of the first wife. (Escriche, Dic.—MATRIMONIO.) These principles were ruled in Smith v. Smith, 1 Tex. R. 621. the appellant, Mrs. Lee, being one of the parties in that case. At that time there was access to but few Spanish works, but subsequent researches have fortified the assur-

XVIII 10

ance that the conclusions were in accordance with both principle and authority.

The appellees assigned as error, that the decree only charged the widow and children with the proceeds of the land sold for their maintenance, whereas they should have been charged with the value of the land at the date of the partition.

This assignment has not been insisted on in argument, the appellees being satisfied that the judgment should be affirmed. The rule adopted by the Court, to charge the proceeds with interest is believed to be sound, and generally would be more just than any other that could be established. The test of the value of the land at the time of the partition is too fluctuating. In some cases the value would be excessively enhanced, in others as much diminished.

Two of the children of Smith by the second marriage died (it is presumed) subsequent to the passage of the law in March, 1848. One-half of their shares was assigned to the mother, and the other half to their brothers and sisters, giving to those of the half blood half as much as to those of the whole blood. The appellants object to this, and insist that collaterals of the half blood cannot take so long as there is a collateral of the whole blood. The Statute is believed to be too plain to leave any room for doubt or construction on the subject. By the second section of the Act of 1848, (Hart. Dig. Art. 593,) it is declared that when a person shall die intestate leaving one parent surviving, and also brothers and sisters of the deceased, &c., one-half shall go to the parent and the other to the brothers and sisters, &c. Art. 597 provides that where inheritance is directed to pass to the collateral kindred, if part be of the half and part of the whole blood, those of the half shall only inherit half as much as those of the whole blood.

There is no error and the judgment is ordered to be affirmed.

Judgment affirmed.