**GRIFFITH v. GOHLMAN, LESTER & CO.**
(No. 248.)

(Court of Civil Appeals of Texas. Beaumont. June 12, 1923.)

1. **New trial 102(1)—Diligence held not shown on motion for new trial on ground of newly discovered evidence.**

Where suit was filed November 6, 1914, and defendant filed a plea of privilege January 5, 1915, and his answer and cross-action May 17, 1915, and the cause remanded on the docket without trial until January 3, 1916, a new trial on the ground of newly discovered evidence was properly refused for lack of diligence; it appearing that the newly discovered witnesses were accessible at the time of the trial.

2. **New trial 99—When granted on ground of newly discovered evidence, stated.**

That a motion for new trial on the ground of newly discovered evidence may be allowed it must appear that the evidence was not only discovered since the trial, but also that the same could not by the exercise of reasonable diligence have been discovered before the trial; the burden being upon the party to show the same.

3. **New trial 104(1) — Properly refused where evidence merely cumulative, and would probably not have produced different result on another trial.**

Refusal of new trial which was sought on the ground of newly discovered evidence was proper where the evidence was merely cumulative, and not so positive and conclusive as probably to have produced a different result upon another trial.

4. **Appeal and error 981—New trial 99 —Motion addressed to sound discretion of court.**

Motion for new trial on the ground of newly discovered evidence is addressed to the sound discretion of the court; and before the appellate court will set his ruling aside it must clearly appear that he abused his discretion.

5. **Judgment 248—Neither pleading without proof nor proof without pleading will entitle one to relief.**

Neither pleading without proof nor proof without pleading will entitle a litigant to relief.

6. **Judgment 251(1)—No recovery for items not pleaded.**

In an action for moneys advanced on consignments of cotton, that plaintiff would be authorized to deduct certain items of expenses from the sales of the cotton such items must have been asserted by proper pleadings, and where they are not pleaded there can be no recovery therefor, even though established by evidence.

Error from District Court, Harris County; Chas. E. Ashe, Judge.

Action by Gohlman, Lester & Co. against John Griffith. Judgment for plaintiffs, and defendant brings error. Reformed and affirmed.

J. E. Canfield, of Floresville, John W. Parker, of Houston, and Dibrell & Mosheim, of Seguin, for plaintiff in error.

Andrews, Streetman, Logue & Mobley, of Houston, for defendants in error.

O'QUINN, J. We shall refer to defendants in error as plaintiffs and to plaintiff in error as defendant, that being their attitude in the court below.

Plaintiffs sued defendant in the district court of Harris county, and alleged that they resided in Harris county, and that defendant resided in Wilson county. For cause of action plaintiffs alleged that on September 4, 1913, and ever since said date, they were en-

gaged in the business of cotton commission merchants at Houston, Texas, receiving, handling, caring for, and selling cotton for a commission, and that in the course of said business they were accustomed to advance money upon cotton consigned to them by various persons from various places in the state of Texas, holding said cotton as factors and commission merchants as security for the money advanced thereon. Plaintiffs further alleged that on September 3, 1913, and on divers dates thereafter, defendant made various consignments of cotton from Floresville, in Wilson county, Tex., to plaintiffs at Houston, Tex., and that the uniform method of handling said transactions was that the said defendant would deliver said shipments of cotton to the railroad company at Floresville, Tex., taking a bill of lading therefor, and consigning said cotton to himself at Houston, Tex., and then drawing his draft for the sum of money to be advanced thereon, payable to the order of the First National Bank of Floresville, and drawn against plaintiffs at Houston, Tex., attaching said draft to said bill of lading, and delivering same to the First National Bank of Floresville, which would send the same, with the bill of lading attached, through its regular banking connections for presentation to and collection from plaintiffs at Houston, Tex.; that in accordance with the method of transacting said business, defendant drew his several drafts, each and all of which were paid at Houston, Tex., by plaintiffs, giving itemized statement of said drafts, which, with interest thereon at the rate of 6 per cent, per annum, amounted to $154,931.89 on July 27, 1914; that on said date defendant was entitled to certain credits by reason of the proceeds of cotton shipped as aforesaid to plaintiffs, which, being deducted from said indebtedness on November 5, 1914, left defendant owing plaintiffs the sum of $45,702.39.

Plaintiffs further alleged that, in order to secure the payment of said sum, or of any sum which defendant might be owing to plaintiffs on account of the transactions aforesaid, defendant transferred and delivered to plaintiffs certain certificates evidencing ownership of capital stock in certain corporations (giving a list of same), and that said certificates were in the possession of plaintiffs, and that they had and held a pledgee's lien upon the same to secure their said debt, and prayed for foreclosure of said lien.

Defendant in proper time filed his plea of privilege to be sued in the county of his residence. This plea was heard and considered by the court, and on February 19, 1915, in advance of the hearing of the case on its merits, was overruled, to which judgment of the court in overruling said plea defendant duly excepted, and a bill of exception was duly taken and allowed. No further action as to the plea of privilege is shown, but there was a trial before a jury in the district court of Harris county January 6, 1916, a verdict upon special issues returned, and judgment rendered thereon in favor of plaintiffs for the amount sued for. Defendant appealed the case to the Court of Civil Appeals by writ of error, where the case was reversed upon the assignment of error as to the overruling of the plea of privilege, and remanded same, without passing upon the other assignments of error, to the district court of Harris county, with instructions. See 200 S. W. 233. Plaintiffs secured a writ of error to the Supreme Court, which court reversed the judgment of the Court of Civil Appeals and remanded the cause to said court for further consideration. See 245 S. W. 233.

• To the cause of action defendant answered by general demurrer, special exceptions, admitted the dealings pleaded by plaintiffs, and the alleged amount of indebtedness, $154,-931.89, but denied the correctness of the credits as stated by plaintiffs, and answered that instead of being indebted to plaintiffs in the sum by them claimed, that they (plaintiffs) were due and owing to him the sum of $4,480.25. Defendant specially pleaded that, beginning with September 3, 1913, and ending November 3, 1913, he shipped and delivered to plaintiffs, at Houston, Tex., 2,291 bales of cotton, and in October, 1913, instructed plaintiffs to sell for his account 1,302 bales of said cotton, which were of high grade and could have been sold in the market at Houston at any time between September 4 and November 3, 1913, for 14 cents on a basis of middling, at an average of 25 points off, or 13¾ cents per pound, amounting to $93,988.-12; that plaintiffs willfully, fraudulently, and negligently failed and refused to sell said 1,302 bales of cotton as they were instructed to do by defendant, and as they were in law bound to do, and therefore held the said cotton at their own risk, and subsequently disposed of same for less than half the price they could have sold same for if they had obeyed defendant's instructions, and denied that he was indebted to plaintiffs in any sum, but that they were indebted to him in the sum of $4,480.25.

Defendant further answered, and admitted that he had deposited with plaintiffs the certificates of stock mentioned in plaintiffs' petition, for the purpose of securing the advancements made by plaintiffs to him in case cotton declined in value, but said that, if plaintiffs had suffered any loss by reason of a decline in the price of cotton, such loss was occasioned by plaintiffs' failure and refusal to obey his instructions to sell said 1,302 bales of cotton, and hence he was entitled to receive back from plaintiffs said certificates, and by fully pleaded cross-action claimed plaintiffs were due him the sum of $11,414.07 over and above any and all in-

debtedness he was then due plaintiffs. Defendant further pleaded that, if he should not be entitled to recover as aforesaid for the failure of plaintiffs to sell his said cotton during the month of October and the first part of the month of November, 1913, then he alleged that on July 8, 1914, he had with plaintiffs 1,302 bales of cotton, which he requested and instructed the plaintiffs to sell, and which they could have sold at 13¾ cents per pound on the market at Houston on said date, but that plaintiffs failed and refused to sell said cotton, and failed and refused to obey his said instructions, and held same against his will and against his instructions until November 5, 1914, at which time, against his will, and without the knowledge of or consultation with defendant, they sold same for less than one-half of what it would have brought had it been sold on said July 8, 1914, or at any time between July 8 and August 2, 1914, as they were instructed to do, by reason of which defendant was damaged in the sum of $49,431.49, which, if deducted from the amount claimed by plaintiffs, would make them owing him the sum of $4,840.25; that, if plaintiffs had obeyed the instructions of defendant to sell said cotton at said time, the same could have been sold at a net profit to defendant of $4,840.25 over and above any and all indebtedness of defendant to plaintiffs, by reason of which plaintiffs were due and owing defendant said sum.

By amended answer, by way of cross-action, defendant alleged that he was entitled to recover of plaintiffs the sum of $12,211, with interest thereon at the rate of 6 per cent. per annum from November 5, 1914, over and above any and all indebtedness owing by him to plaintiffs, and to the return of his said stock certificates.

There were a number of supplemental petitions and supplemental answers filed by the parties, which were in the nature of specific denials, which we do not deem necessary to more specifically set out. The case was tried before a jury upon special issues. The court charged the jury as follows:

"Gentlemen of the Jury: This case will be submitted to you upon what is known as 'special issues,' each of which you will answer according as you find the facts to be from the evidence, writing your answers upon the separate sheet of paper which is furnished herewith for that purpose, and having your foreman sign same.

"Special issue No. 1: Did the plaintiffs use reasonable diligence to comply with the instructions given by defendants on July 8, 1914, to sell all his cotton? Answer 'Yes' or 'No.'

"In connection with the above issue, you are instructed that by the term 'reasonable diligence,' as used therein, is meant such diligence as a man of ordinary prudence would have used under the same or similar circumstances. If you answer the above issue 'Yes,' then you need not answer any other question submitted to you, but if you answer said issue 'No' then you will answer the following issue:

253 S.W.—38

"Special issue No. 2: If the plaintiffs had used reasonable diligence to comply with the instructions given by defendant on July 8, 1914, to sell his cotton, the evidence showing the number of bales then on hand to have been 1302 bales, could the plaintiffs, had they used such diligence, have sold said number of bales at the market price on the market in Houston prior to defendant's thereafter countermanding the order to sell on July 17, 1914? Answer 'Yes' or 'No.'

"Special issue No. 3: If you answer the foregoing issue 'Yes,' then state at what price the said 1,302 bales of cotton could have been sold by plaintiffs on the Houston market on or about July 8, 1914, and up to countermanding the order to sell the said cotton? Answer $———."

"You are instructed that you are the exclusive judges of the facts proved, the credibility of the witnesses, and the weight to be given to the testimony.

"The burden of proof is upon the defendant to show by a preponderance of the evidence the failure of plaintiffs to use reasonable diligence to comply with instructions concerning the sale of his cotton, and you will look to all the evidence before you in determining the question.

"[Signed]   Chas. Ashe, Judge Presiding."

The jury answered to special issue No. 1 "Yes," and, as instructed by the charge, did not answer the other issues. Upon the answer of the jury to special issue No. 1 judgment was rendered in favor of plaintiffs for the amount sued for, and for foreclosure of the pledgee's lien upon said stock certificates mentioned in plaintiffs' petition.

The first assignment of error attacks the action of the court in overruling defendant's plea of privilege, which we have already seen was sustained by the Court of Civil Appeals, and the cause remanded, with instructions to change the venue to Wilson county, and which said judgment of the Court of Civil Appeals was reversed by the Supreme Court and the cause remanded to the Court of Civil Appeals for further consideration. See 245 S. W. 233.

The second assignment of error asserts that the court erred in refusing to set aside the finding of the jury in answer to special issue No. 1 that plaintiffs used reasonable diligence to comply with the instructions given by defendant on July 8, 1914, to sell all his cotton, insisting that said finding "was contrary to the great weight of the evidence, and was not supported by the evidence, and was contrary to the evidence."

The statement of facts is voluminous, containing 155 letters and telegrams, covering 100 pages of the statement of facts, statements and account sales covering 143 pages, and long-drawn-out testimony of witnesses, to copy even a substantial portion of which into this opinion would make it of unreasonable length, and, in our opinion, would not add to its lucidity, so that we will not discuss the evidence, but will say that the ques-

tion was one of fact, and the only question in the case, and that we have carefully gone over and considered all the evidence, and believe same sufficiently supports the finding of the jury, and therefore we overrule the assignment.

The fourth assignment of error asserts that the court erred in refusing to set aside the judgment and grant a new trial because of newly discovered evidence after the trial, said newly discovered evidence tending to show that there was a market for cotton of the class and grade of defendant's cotton at Houston on July 8, 1914, and up to July 17, 1914, which ranged from 13 cents to 14 cents per pound.

The alleged newly discovered testimony was that of three witnesses, to wit: James N. Darrow, of the firm of James N. Darrow & Co., Sam Lewis, manager of the Reagan Bale Company, and J. St. Mary, whose affidavits were attached to the motion for new trial, and are as follows:

Affidavit of James N. Darrow:

"Before me, the undersigned authority, a notary public in and for said county and state, on this day personally appeared James N. Darrow, manager of the firm of James N. Darrow & Co., who upon his oath deposes and says:

"That during the years 1913 and 1914, and prior thereto and at the present time, his firm was engaged in the business of buying cotton in the city of Houston, Harris county, Tex., and that during the month of July, 1914, from the 8th day thereof up to and including the 17th day, he was in the market for and buying cotton, and that during said month he purchased about 1,300 bales of cotton. That the principal class of cotton he was buying and desirous of buying was the low grades. That he is and was familiar with the cotton market conditions existing in the city of Houston at such time, and that he has seen a list of the class of the Griffith 1,302 bales of cotton which was in the possession of Gohlman & Lester, cotton factors in the city of Houston, and that he believes that, had such cotton been offered, and sufficient effort made to have sold said cotton, and a sufficient reduction made in the price, that purchasers could have been found for same at some price around or below the market quotations value of cotton at said dates. That such list of cotton was not tendered to him, to the best of his recollection, for sale by said Gohlman & Lester during the said days in July heretofore mentioned, and that his office was open and he was in the market for cotton at such times of the class and grade hereinbefore mentioned of low middling and below. That upon examining the said list of Griffith cotton it shows that there were approximately 200 bales in said list classed as low grade cotton, and of such character as he was generally in the market for, and that had such cotton been tendered to him for sale he would probably have bought same, provided the prices could have been agreed upon, and that he was paying for such character of cotton at such time 13½ cents to 14 cents basis middling. "James N. Darrow. "Sworn to and subscribed," etc.

Affidavit of Sam Lewis:

"Before me, the undersigned authority, a notary public in and for said county and state, on this day personally appeared Sam Lewis, general manager of the Reagan Bale Company, cotton buyers located in Houston, Harris county, Tex., who after being by me duly sworn, upon his oath states:

"That he is engaged in the business of buying cotton and was engaged in such business during the years 1913 and 1914, and prior thereto, and is now engaged in such business. That during the month of July, 1914, and during the days of from the 8th day of July up to and including the 17th day of said month, he was in the market for the purchase of cotton, and was desirous of buying cotton at such time at such price as he thought it possible to make money on such purchases. That he has been shown a list of 1,302 bales of cotton known as the Griffith cotton, which was in the hands of Gohlman & Lester, cotton factors located in Houston, Tex., such cotton being with Gohlman & Lester during the years 1913 and 1914, and that had said list of cotton been tendered him for sale he would have purchased same upon the conditions above set forth. That during said days in July from the 8th to the 17th, inclusive, in the year 1914, the said Gohlman & Lester did not tender to him for purchase said list of cotton or any part thereof.      Sam Lewis.

"Subscribed and sworn to," etc.

Affidavit of J. St. Mary:

"Before me, the undersigned authority, a notary public in and for said county and state, on this day personally appeared J. St. Mary, who, after being by me duly sworn, upon his oath states:

"That he is a cotton buyer with offices located in Galveston, Galveston county, Tex., and in Houston, Harris county, Tex., and that he was engaged in such business during the years 1913 and 1914, and prior thereto, and is still engaged in such business. That during the month of July, 1914, and especially from the 8th day up to and including the 17th day of such month, his said offices were open and he was in the market for cotton in Galveston and Houston. That he has seen a list of grades for what purports to be the list of cotton owned by John Griffith of Floresville, Tex., and which was in the possession of Gohlman & Lester, cotton brokers in Houston, Tex. That he was in the market for such character of cotton, and, in fact, all the low grades of cotton that were for sale, and that had such cotton been tendered him for purchase he would have done so had the price been mutually agreeable. That there was a market for cotton during the said month of July, 1914, and during the days between the 8th day of said month up to and including the 17th day thereof, in the city of Houston, and that he was in the market as a purchaser of cotton. "J. St. Mary. "Sworn to and subscribed," etc.

[1] We think the assignment should be overruled. As we view the record, there was lack of diligence. This suit was filed November 6, 1914. Defendant filed his plea of privilege on January 5, 1915. He filed his

answer and cross-action on May 17, 1915. The case remained on the docket without trial until January 3, 1916, more than a year from the time of filing. While it is true that defendant lived at Floresville, in Wilson county, and says that he was a stranger in Houston, still he admits that he went to Houston in advance of the trial, and "interviewed certain buyers," among them his witness A. S. Cleveland. Who or how many of the cotton buyers he interviewed is not shown, nor why he did not interview the witnesses whose affidavits he attaches to his motion is not shown. It is shown that in the telephone directory of the city of Houston there is listed under the heading "Cotton Buyers, Exporters, Factors and Merchants" all those who at said time were engaged in said business in Houston, and we think that by the exercise of reasonable diligence defendant could have "interviewed" each of said persons and firms. It also appears that one of the plaintiffs, Lester, while on the stand testifying on recross-examination, called defendant's counsel's attention to the list of cotton buyers in Houston contained in the city telephone directory. His witness A. S. Cleveland was a long time citizen of Houston, for many years prominent in the cotton business, and an inquiry by defendant of him would have elicited the information as to all those that were engaged in said business in said city. It does not appear that defendant made any effort to consult either said witness or the telephone directory in order to find out who were at that time engaged in the cotton business in Houston. We do not find any statement, sworn or otherwise, from either of the three able counsel that represented defendant to the effect that they were not in possession of the information as to said witnesses and what they would have testified, nor that by the exercise of reasonable diligence they could not have learned of same, nor that they made any effort whatever to procure said information from said witnesses or any other person. One of said counsel, Hon. J. W. Parker, had for many years been a practicing lawyer in Houston, and therefore must have been acquainted with the most, if not all, of the cotton buyers in said city.

[2] For said motion to have been good it must have appeared that the evidence was not only discovered since the trial of the case, but also that same could not by the exercise of reasonable diligence have been discovered before the trial. The burden was upon defendant to show same. Where an appellate court is asked, as a matter of law, to hold that the trial court abused his discretion in refusing a new trial on the ground of newly discovered evidence, the party seeking the new trial by reason thereof must, among other things, show that he could not, by the use of reasonable diligence, have discovered same in time for the trial.

The materiality of the evidence was known to defendant and his counsel from the beginning—whether plaintiffs used reasonable diligence to sell the cotton being the main issue in the case. Even after the case went to trial these witnesses could have been reached, interviewed, and produced in court; but the record does not disclose any effort made to get in touch with them, nor was there a request for more time in which to do so, which, had same been made with proper showing, the court would doubtless have granted.

[3, 4] Furthermore, the evidence appears to be cumulative, at least of the testimony of the witness Cleveland, and to say the least it is not of that positive and conclusive nature that would probably produce a different result upon another trial. The witness Darrow says that "he believes that had such cotton been offered and sufficient effort made to have sold said cotton and a sufficient reduction made in price, that purchasers could have been found for same at some price around or below the market quotations value of cotton at said dates." Though he was a cotton buyer, and specialized in lower grades, and being familiar with the market conditions in Houston, he does not say that if said cotton had been offered to him he would have bought it, but says that if sufficient reductions in price were made he believes that purchasers could have been found. He is not even certain as to whether or not the cotton was in fact offered to him, but that if it had been "he would probably have bought same, provided the price could have been agreed upon." The witness Lewis says "that he was desirous of buying cotton at such time at such prices as he thought it possible to make money on such purchases; that he has been shown a list of 1,302 bales of cotton known as the Griffith cotton, which was in the hands of Gohlman & Lester, cotton factors, and that, had said list of cotton been tendered him for sale, he would have purchased same upon the conditions above set forth." What conditions? At what price? The witness St. Mary says "that he was in the market for such character of cotton, and in fact all the low grades of cotton that were for sale, and that had such cotton been tendered to him for purchase he would have done so had the price been mutually agreeable." We are left to conjecture what he meant by "had the price been mutually agreeable." What idea could the jury have drawn as to whether he would have bought and at what price? However, in any event, we think defendant failed to meet the burden of proof that his failure to sooner discover the new testimony was not due to negligence on his part, for it appears that little, if any, effort to do so was made, and the excuse given we do not think, under the law, is sufficient. The motion was addressed to the sound discretion of the court, and before we would be

authorized *to set* his ruling aside it must clearly appear that he abused his discretion, which we do not think is shown.

The fifth assignment of error complains that the court erred in not granting a new trial for the reason that the judgment is excessive in the sum of $9,455.58, for that the plaintiffs deducted said amount from the amount received for cotton sold, which said amount so deducted was for freight, storage, insurance, and commissions charged by plain-·tiffs on sales of defendant's cotton, there being no pleading on the part of plaintiffs showing what, if any, freight, storage, and insurance had been paid by the plaintiffs, and whether such charges, if paid, were reasonable, and what, if any, commissions they were entitled to, and whether such commissions were reasonable; defendant insisting that under the pleadings plaintiffs were not authorized to deduct any amount from the aggregate amount received by them from sales on his cotton for any freight, storage, or insurance paid, or for any commissions which they might have been entitled to, there being no pleading upon which to base such charges.

[5, 6] We have carefully inspected all the pleadings, and find that there is no pleading by plaintiffs upon which to base a claim for any of the items mentioned. It is a fundamental rule of practice that neither pleading without proof nor proof without pleading will entitle a litigant to relief. Judgments must follow the pleadings—there must be a basis for the judgment in the pleadings. Maddox v. Summerlin, 92 Tex. 488, 49 S. W. 1033, 50 S. W.. 567. The items were for claims against the proceeds on cotton sales, as shown to have been paid by plaintiffs; but in order to have the right to deduct them from the amounts received from sales of defendant's cotton they should have been asserted by proper pleadings. There can be no recovery of such items, even where the evidence establishes them, where they were not pleaded. Railway v. Cox (Tex. Civ. App.) 221 S. W. 1043; Montgomery v. McCaskill (Tex. Civ. App.) 189 S. W. 798. The assignment must be sustained. However, the amount of said charges being certain and shown, we will here reform the judgment by striking said items, amounting to said sum of $9,455.58, therefrom, and as thus reformed the judgment will be affirmed.

Reformed and affirmed.