**NORTON et al. v. O'NEIL et al.** (No. 8190.)

Court of Civil Appeals of Texas. San Antonio.
April 3, 1929.

Rehearing Denied May 8, 1929.

Atlas Jones, of San Antonio, and Ditzler H. Jones, of Uvalde, for appellants.

John J. Dwyer, of New York City, Martin & Martin and Will Glover, all of Uvalde, for appellees.

COBBS, J. Appellees brought this suit against appellants in trespass to try title to and recover 79.8 acres and 42 acres of land in Uvalde county, Tex., in the name of James O'Neil, deceased. It is alleged that Sapopa Ruiz was the common-law wife of James O'Neil, deceased, and Maria O'Neil was their child. Mrs. Sapopa Ruiz was a married woman, but her husband, Antonio Salazar, sepa-

rated from her and went to the Republic of Mexico and never returned to her, and she neither saw nor heard of him again. They married in 1912 and separated within six months. About three years thereafter she entered into relations and lived with James O'Neil as his common-law wife, and so continued to live with him as his wife until his death.

Appellees claimed the lands in controversy on the ground of heirship from and under James O'Neil. Appellants claimed the lands by virtue of being heirs of Annie O'Neil, whose separate estate it was alleged to be. The other parties suing for themselves claimed the estate for themselves as heirs, and W. S. Ingram made the defense that he had a claim against the estate for funeral expenses and money advanced for taxes.

The case was tried to a jury upon special issues and upon whose finding judgment went in favor of appellees.

In order to simplify the questions and dispose of them as fast as possible, we will first dispose of those raised by Maria O'Neil and Sapopa Ruiz, appellees.

It is conclusively proven that Sapopa Ruiz, the mother of Maria O'Neil, for some seven or eight years and much more, lived with James O'Neil, and that during said time he held Sapopa Ruiz out to the general public as his wife and Maria as his child. Clearly, if she had not then had a living husband a common-law marriage might have been established. But she had a living husband all the time by the name of Antonio Salazar, whom she married in 1912, and who separated from her about six months later and went to the Republic of Mexico. She commenced to live in the state of so-called common-law marriage with James O'Neil about three years after her husband went to Mexico, and then continued to live with him as his wife, until his death in 1924. Therefore she lived with him as such wife five years after the seven years expired from the date that her husband Antonio Salazar had left her and went to Mexico. This was claimed to ripen the relation into a common-law marriage, even though it had been an illegal contract of marriage at its inception, and so continued to the end. Article 2581 of the Revised Statutes provides: "Where a man, having by a woman a child or children, shall afterward intermarry with such woman, such child or children, if recognized by him, shall thereby be legitimated and made capable of inheriting his estate. The issue also of marriages deemed null in law shall nevertheless be legitimate."

Being an illegal marriage in the beginning, it was never a common-law marriage under such facts, at least not by construction. That could only be obtained by an actual marriage. The mere living together would not

constitute a real or new marriage. It required a definite remarriage after the seven years' time was up to legitimate it and make the child capable of inheriting the estate; it could not be done by construction.

There was no error in the action of the trial court in holding the status of common-law marriage had not been created. Edelstein v. Brown (Tex. Civ. App.) 95 S. W. 1126; Id., 100 Tex. 403, 100 S. W. 129, 123 Am. St. Rep. 816. On the presumption of death see article 5541, R. S. Also see Sov. Camp of Woodmen of World v. Robinson (Tex. Civ. App.) 187 S. W. 219; Grigsby v. Reib, 105 Tex. 598, 153 S. W. 1124, L. R. A. 1915E, 1, Ann. Cas. 1915C, 1011; Schwingle v. Keifer, 105 Tex. 609, 153 S. W. 1132; Berger v. Kirby, 105 Tex. 611, 153 S. W. 1130, 51 L. R. A. (N. S.) 182.

In this case no evidence or circumstance is pointed out that Antonio Salazar died at any particular time or place, and the only thing here to establish his death is the seven-year period of absence from the state.

This case being considered upon its merits, we think all questions that do not go to the heirship of James O'Neil may be passed as immaterial to the real issue in the case.

The items of $237.50 and $332.50 were found to be barred by the statute of four years' limitation and passed out of the case.

The court instructed the jury to find that the plaintiff Sapopa Ruiz did not enter into a common-law marriage with James O'Neil, and then the court submitted to the jury the issue of whether or not Charles W. Donnelly and his coplaintiffs were heirs of James O'Neil, and the jury found that they were, and the court submitted to the jury the issue of whether or not 79.8-acre tract was the separate property of Annie O'Neil, and the jury found that it was not; and the court also submitted to the jury the issue of the rental value of said lands.

After the jury found against the claim of a common-law marriage, the only issue for them to determine was as to who inherited the estate of James O'Neil, deceased.

The will of James O'Neil filed in Uvalde, Tex., provides:

"Uvalde, Texas, August 11, 1911.

"To Whom it May Concern—as I am getting on in years and time on this earth may close I desire to make my last will. I bequeath to my relatives in Rochester, N. Y. State any and all property belonging to me in Uvalde County—their names and address will be found in my trunk in my room in Uvalde Hotel, and I further appoint the Commercial National Bank of Uvalde Administrator. James O'Neil.

"Witnesses: P. Humphreys. R. L. Sutherland."

The evidence conclusively established the heirship to be in appellees, and the court so adjudged, and the findings are supported.

The appellees were found to be the heirs who resided in New York, mentioned in the will, and were entitled to recover herein.

The findings of the jury as to heirship are in favor of appellees in cross-action, and the heirship is established in Charles W. Donnelly, George H. Lottspike, Minnie L. Newman, a feme sole, Bessie Fee, a feme sole, Edward O'Neil, Anna O. Ronan, a feme covert, joined by her husband, Louis Ronan, Agnes O. Street, a feme covert, joined by her husband, Walter Street, Henrietta O. O'Donnell, a feme covert, joined by her husband, Frank O'Donnell, John O'Neil, and James L. O'Neil. It is supported by the evidence.

It was further adjudged that Sapopa Ruiz and Maria O'Neil take nothing by their suit. and the costs were taxed against Sapopa Ruiz and Maria O'Neil.

And it was further ordered "adjudged and decreed that the plaintiffs in cross-action, Charles W. Donnelly, George H. Lottspike, Minnie L. Newman, a feme sole, Bessie Fee, a feme sole, Edward O'Neill, Anna O. Ronan, a feme covert, joined by her husband, Louis Ronan, Agnes O. Street, a feme covert, joined by her husband, Walter Street, Henrietta O. O'Donnell, a feme covert, joined by her husband, Frank O'Donnell, John O'Neil and James L. O'Neil, recover of and from the defendants in cross action herein declaring them to be the only surviving heirs at law of James O'Neil, deceased, and as such only surviving heirs that they have judgment for the joint title and possession of" the 121.8 acres of land described in the two tracts situated in Uvalde county, Tex.

It was ordered that the said above-named plaintiffs in cross-action recover of the defendants in cross-action, E. A. Norton and H. G. Norton, jointly, the sum of $75.60 as rental upon 75.6 acres of said land for two years at the rate of 50 cents per acre per annum, together with interest at the rate of 6 per cent. per annum from date of judgment.

And that the said named plaintiffs in cross-action recover of and from the defendant W. S. Ingram the sum of $21 as rental on 21 acres of said land at the rate of 50 cents per acre per annum for two years, together with interest at the rate of 6 per cent. per annum until paid.

And that the named parties likewise recover from defendant Atlas Jones the sum of $25.20 as rental on 25.2 acres of said land at the rental value of 50 cents per acre per annum for two years, together with interest thereon at 6 per cent. from date of judgment until paid.

It was also ordered that the named parties plaintiff recover of and from defendant W. S. Ingram the sum of $25, together with interest at 6 per cent. per annum from date of judgment, being the sum of money collected by said Ingram from the estate of James O'Neil, deceased, at the time said de-

fendant had charge of the same under probate proceeding in the county court of Uvalde county.

It was further ordered that W. S. Ingram recover $36, with interest at the rate of 6 per cent. per annum from date of judgment, being the amount paid for taxes by said defendant on 21 acres of land held by him for the years 1925, 1926, and 1927, as a set-off and counterclaim against the $21 rental and $25 hereinabove recovered against said W. S. Ingram, leaving a balance of $10 which the said plaintiffs in cross-action, Charles W. Donnelly, and others above named, are entitled to collect from said W. S. Ingram on their judgments of $21 and $25.

There was ample testimony to support the foregoing judgment in the several sums.

While this case has been made somewhat complicated by the motions filed, objections of the parties, and lengthy briefs, we have gone over the same and considered them. We overrule all motions and exceptions as without merit.

We think the charge of the trial court sufficient, and that the case has been fairly tried without error of any consequence, and that justice has been administered.

The judgment is affirmed.