**DEFFERARI et al. v. TERRY et al.**

No. 9887.

Court of Civil Appeals of Texas. Galveston.

Oct. 31, 1933.

Rehearing Denied Jan. 4, 1934.

**254**

Stewarts, Maco Stewart, and W. Noble Carl, all of Galveston, for appellants.

Snell & Aynesworth and E. H. Cavin, both of Houston, for appellees.

GRAVES, Justice.

The appellee Mrs. Gussie Terry, pursuant to a jury's verdict on special issues to the effect that her mother and Gus Defferari, prior to her birth, agreed to become husband and wife, thereafter living and cohabiting together as such, claiming and holding themselves out to the public to be so married, together with such additional findings of the court on issues not submitted to the jury as may properly be assumed to have been made, was awarded judgment against the appellants for both the title to and possession of an undivided one-fifth interest in certain lots of land in the city of Galveston, as well as an order for the partition thereof between the parties; the property having passed by the will of Louisa Defferari to her grandchildren.

The appellants were conceded to be the only other grandchildren of Louisa Defferari, the testatrix, and the appellee Mrs. Terry sued as the lawful child of one of Louisa's sons, Gus Defferari, through her claim of his common-law marriage with her mother.

Appellants assail the judgment so awarded upon contentions which, in the main, may be thus epitomized:

(1) The court should have granted appellants' request for a peremptory instruction in their favor for these reasons: (a) The undisputed evidence showing that Gus Defferari had a lawful wife throughout the alleged duration of his common-law marriage with her mother, the appellee could not have been his legitimate child; (b) the undisputed evidence having shown that the relationship between Gus Defferari and appellee's mother was illicit and unlawful at its inception, such relation would continue meretricious, having never been made legal by marriage, and appellee, if an offspring of such a union, could not be the legitimate child of Gus Defferari; (c) the evidence in this case having failed to raise an issue of fact as to common-law marriage between Gus Defferari and appellee's mother, her own evidence showing the relationship to be a mere meretricious union, it was error for the court to submit the question of common-law marriage to the jury to be determined on surmise and supposition.

(2) The verdict of the jury was contrary to the great weight and overwhelming preponderance of the evidence; hence should have been set aside and a new trial granted on appellants' motion duly made therefor.

(3) Witness Eula Miranda, having admitted that she did not remember the alleged agreement between herself and Gus Defferari, it was error for the court to allow her to give her conclusions and surmises as to the alleged agreement.

(4) City directories of the city of Galveston for the years 1905 to 1914, inclusive, coming from proper custody, in general use in the community, and properly proved by one under whose management they were compiled, after long lapse of time, were admissible in evidence to prove facts which occurred long prior to the time this controversy arose; wherefore the court erred in excluding such directories, same having been duly offered in evidence by appellants.

(5) The court erred in refusing appellants' request that the jury be affirmatively instructed that the burden of proof was upon the appellee to show by a preponderance of the evidence the affirmative of the issues of fact relied upon by her for a recovery.

(6) The newly discovered evidence of chattel mortgages signed by appellee's mother as a single person during the time of the claimed marriage to Gus Defferari, and the testimony of Joe Shannon and Tracy Merrick being discovered after trial, and being of such force that they would probably produce another result on another trial, a new trial should have been granted.

After a careful consideration of the record, it is determined that none of these contentions should be sustained. The special issues, to which the jury in each instance answered "Yes" were these:

"No. 1. Do you find from a preponderance of the evidence that Gus Defferari and the mother of plaintiff, Gussie Terry, prior to the birth of the plaintiff, mutually and unqualifiedly agreed and consented, the one with the other, to become then and from that time thenceforth husband and wife?

"No. 2. Do you find from a preponderance of the evidence that the said Gus Defferari and plaintiff's mother, pursuant to such agreement (provided you have found such agreement was made), lived together and cohabited as husband and wife, the term 'cohabited' meaning living together, claiming to be married, in the relationship of husband and wife and doing those things ordinarily done by husband and wife?

"No. 3. Do you find from a preponderance of the evidence that the said Gus Defferari and plaintiff's mother, during the time they

lived together and cohabited as husband and wife (provided you have so found), held each other out to the public as husband and wife?"

◼ In the opinion of this court not only were the issues as submitted clearly raised by the testimony, but there was also enough to support the jury's affirmative findings thereon; wherefore without deeming it indispensable either that the contributing elements thereof or the settled rules governing the two different attacks made upon it be here reviewed, there clearly was no reversible error in so far as concerned the quantum of evidence required in either respect.

◼ Since the verdict as a whole plainly portends that the mother and father in fact complied with all the requisites of a common-law marriage under the rule in Texas, at least in the absence of some impediment to its being so recognized, as the alleged pre-existing ceremonial marriage is claimed to be, the trial court's theory of the cause in submitting the issues and its consequent judgment on the answers were proper, we think, upon the further conclusion that, were it conceded that appellee's father did have such a living wife by a prior marriage throughout the period of his having so lived with her mother, that actual relationship between her parents would at most only amount to a "marriage deemed null in law," under the concluding provision of R. S. article 2581, and she would still be the legitimate issue thereof; hence entitled to take as a grandchild under the terms of Mrs. Louisa Defferari's will.

It is true appellants' proof showed that appellee's father married another woman prior to meeting appellee's mother and did not obtain a divorce from her until after he and appellee's mother had separated following their having lived together for a period of eight years in the manner found by the jury; but there was further testimony to the effect (1) that her mother did not know either at the time she made the agreement to live with Gus Defferari as his wife or during the period she did so live with him that he had a living wife; (2) that her father, Gus Defferari, had sent his prior wife, Laura, to New Orleans before his first meeting with appellee's mother, and that Laura was reported at Galveston to have died soon thereafter from a stroke of paralysis; (3) that Gus Defferari's prior wife was known as Laura, or Laura Bella, that she lived in New Orleans, and that she had so gone home to her people there; (4) that the appellee was the child of Gus Defferari, was recognized by him as such, and that her mother during the eight years she was so living and cohabiting with him and being held out as his wife had not been other than faithful to their undertaking to so live at any time during that relationship; (5) that the testatrix herself, under whom the appellee claims, likewise during her lifetime recognized the little girl as her granddaughter, received many visits from and treated her affectionately as such.

While her father, Gus Defferari, had died some time before this suit was filed, appellee's mother, under her present married name of Mrs. Eula Miranda, was present at the trial and testified to some of the things just enumerated, among them that appellee was the fruit of her life with Gus Defferari, that she never until long afterwards heard anything about his having had a living wife before or during any part of that period, and that she herself had lived with him only during all that time.

In the given state of the record, while this precise interpretation of the final declaration of this statute—that is, so as to hold legitimate the issue of a common-law marriage deemed so null—does not seem to have heretofore been announced by a Texas appellate court, no reason is perceived as to why it should not be given such effect, considering its history, the absolutism of its terms, and the great weight of judicial decision to that effect in sister states, upon the legal equivalent of the same provision, applied to like circumstances.

The language of our statute is this, the italicizing, however, being added here:

"Art. 2581. Illegitimate children.

"Where a man, having by a woman a child or children, shall afterward intermarry with such woman, such child or children, if recognized by him, shall thereby be legitimated and made capable of inheriting his estate. *The issue also of marriages deemed null in law shall nevertheless be legitimate.* (P. D. 3427.)"

◼◼ The plain objective of this act, it not essaying to validate marriages, either statutory or common-law ones, was to legitimate children, and it dogmatically does that as to "the issue of marriages deemed null in law"; in Texas common-law marriages are of the same validity as those consummated under statutory provisions (Speer's Law of Marital Rights in Texas [3d Ed.] p. 32, § 30, with cited authorities), and the affirmative findings of the jury on the inquiries propounded established the existence of the essential elements of a common-law marriage in this instance, as laid down by the Supreme Court in Grigs-

by v. Rieb, 105 Tex. 597, 153 S. W. 1124, L. R. A. 1915E, 1, Ann. Cas. 1915C, 1011, and by the cited edition of Speer's work, supra, at page 32, with collation of supporting cases.

It would further seem to be true with us that a valid statutory marriage can no more be consummated, when one of the parties has a living undivorced spouse, than in the same circumstances can one be at common law; and, although it was apparently made with reference to a ceremonial marriage, this early declaration of our Supreme Court through Chief Justice Hemphill as to the reaches of this ultimate recitation in the statute, in Hartwell v. Jackson, 7 Tex. at page 580, would seem to state the rule, applicable alike to all marriages, whether statutory or common law: "The expressions in which this Section is embodied, are too perspicuous to require comment. The issue of marriages deemed null in law, without regard to the grounds of nullity, are legitimated; and are, consequently, endowed with all the rights of the legitimate issue."

To the same general purport also are Lee v. Smith, 18 Tex. 141, Carroll v. Carroll, 20 Tex. at page 746, Texas Jurisprudence, vol. 6, p. 366, "Bastardy", §§ 7, 8, and Speer's Marital Rights in Texas (3d Ed.) §§ 38 and 42, in which latter citation this statement of the doctrine appears: "By force of the statute noticed in Sec. 38, the children born of such putative marriages, and even of such meretricious unions, if the relation assumed the form of marriage at all, would be legitimate, and entitled, of course, to inherit from their parents. It is not meant to say, however, that children born out of wedlock are ever permitted to inherit as legitimate offspring, but merely to indicate that the force of the statute referred to makes legitimate all children born of those marriages deemed null in law without regard to the grounds of such nullity." See, also, Hayworth v. Williams, 56 Tex. Civ. App. 179, 120 S. W. 1138; 7 Corpus Juris, p. 948, "Bastards," § 19; 3 Ruling Case Law, p. 723; Goodman v. Goodman, 150 Va. 42, 142 S. E. 412; Atkins v. Rust, 151 Okl. 294, 3 P.(2d) 682, 84 A. L. R. 491; Swinney v. Klippert (Ky.) 50 S. W. 841, 20 Ky. Law Rep. 2014.

The authorities cited by appellants as holding to the contrary of the view expressed— for example, Norton v. O'Neil (Tex. Civ. App.) 17 S.W.(2d) 66, rev. (Tex. Com. App.) 29 S.W. (2d) 1060—do not seem to us to do so upon the same state of facts as obtains here.

This appellee was not born clear out of wedlock, as appellants ably urge, but, as already indicated, under the facts found by the jury, to a union that not only had all the form and requisites of a marriage valid at common law, but also was such putatively, at least on the mother's part, there being only in the way the asserted pre-existing ceremonial marriage of her father; whereas in the O'Neil Case there was neither a new agreement to enter into an "actual marriage" after the presumptive death of the former husband, nor did it appear that either party to the claimed common-law marriage was ignorant of the prior statutory one, the woman herself, who was the one claiming under the former, necessarily knowing of the existence of the latter.

Another difference inhering in the situation at bar, potential though it may be, is the possibility, if not the probability, under the testimony before referred to, that, after. all, the only impediment that ever existed to the validity as a marriage of the common-law relationship between the appellee's parents was removed while it yet endured by the death of her father's prior wife at New Orleans soon after she was said to have so returned there; for that would be the legal result of the confluence of such conditions. Lee v. Smith, 18 Tex. 141, supra; Smith v. Smith, 1 Tex. 621, 46 Am. Dec. 121.

In any event, it is quite certain that the evident temper of our Legislature in so early and so persistently following the lead of "The Old Dominion" in, through this provision, fastening into our jurisprudence so radical an express departure in that particular from its general adoption of the common law of England, under which all bastards were illegitimate (Ives v. McNicoll, 59 Ohio St. 402, 53 N. E. 60, 43 L. R. A. 772, 69 Am. St. Rep. 780), entitled this appellee to the indulgence of "every intendment in favor of her legitimacy, not necessarily excluded by the proof." 3 Ruling Case Law, p. 723.

If, among those cited, there be others not distinguishable on the facts from those here that directly hold otherwise concerning the meaning and effect of the last sentence of the quoted article, this court has misinterpreted them.

As before suggested, authorities from other states holding legitimate the issue of common-law marriages deemed null in law, under acts not in effect different from our own, do not appear to be lacking. Some of these are Evatt v. Miller (1914) 114 Ark. 84, 169 S. W. 817, 819, L. R. A. 1916C, page 764; Stones v. Keeling, which was decided at the May term, 1804, of the Court of Appeals of Virginia, 5 Call, 143; Heckert v. Hile's Adm'r, 90 Va.

390, 18 S. E. 841; Ives v. McNicoll, 59 Ohio St. 402, 53 N. E. 60, 43 L. R. A. 772, 69 Am. St. Rep. 780; Leonard v. Braswell, 99 Ky. 528, 36 S. W. 684, 18 Ky. Law Rep. 395, 36 L. R. A. 707; Buchanan v. Harvey (1864) 35 Mo. 276; Welch v. All Persons (1929) 85 Mont. 114, 278 P. 110, 115; Kester v. Kester (1929) 106 W. Va. 615, 146 S. E. 625.

An abstract of the Miller opinion, with the objective of at least pointing to the rationale of its determination, may be made as follows:

"* * * We think, too, that his holding that Lidmilla's marriage was null and void is correct, and she therefore has no rights in this estate; but we do not agree that her children are excluded from the right to participate in the division of that estate.

"The decision of that question involves the construction to be given section 2640 of Kirby's Digest, which reads as follows:

" 'The issue of all marriages deemed null in law, or dissolved by divorce, shall be deemed and considered as legitimate.' * * *

"It will be observed, too, that the protection of this statute is limited to the issue of marriages. It does not apply to the mere progeny of illicit intercourse, nor to children born of persons whose relationship is merely that of persons who are illegally cohabiting together as man and wife. It shields only children born to parents who undertake to marry, and do marry, but whose marriage for any cause is null in law. * * *

"But it does not follow, because Lidmilla's marriage was contracted in Texas, where common-law marriages were valid, that she is entitled to the rights which inure to a lawful wife. The marriage was an unlawful one, because it was bigamous. * * *

"As we have said, there was no proof here that Frank Miller was ever divorced from Anna. At common law all children, except the issue of lawful marriages, were illegitimate and remained so; but the harshness of this rule has been much relaxed, until now in most, if not in all, American states statutes have been enacted which provide that the issue of a void or voidable marriage shall be legitimate notwithstanding the invalidity of the marriage. Long on Domestic Relations (2d Ed.) § 244, and cases there cited.

"One of the earliest states to enact a statute to this effect was Virginia, where in 1785 a statute was passed which reads as follows:

" 'The issue of marriages deemed null in law, or dissolved by a court, shall nevertheless be legitimate.'

"The case of Stones v. Keeling, which was decided at the May term, 1804, of the Court of Appeals of Virginia, 5 Call, 143, involved the construction of this statute. * * *

"It was the unanimous opinion of the court in that case that the issue of the second marriage were legitimate, and in a concurring opinion by Roane, Justice, it was said:

" 'The second marriage, therefore, was not lawful; it was even void. But we cannot, in this case, say that it was criminal. Circumstances may exist, such as a belief of the death of the first husband, or a seven years' absence by him, which may render the second marriage even innocent. We are bound to consider this marriage innocent, for we cannot, in this proceeding, inquire into its guilt. But if it were otherwise, if the Legislature should even be supposed to consider every second marriage, living a first husband or wife, as criminal, wherefore should they visit the sins of the parents upon the innocent and unoffending offspring? But this was not the temper of the Legislature. In the case of incestuous marriages, where the parties with full knowledge of the everlasting bar which does and ought to exist between them, enter into this contract, and produce an innocent offspring in defiance of laws human or divine, where you cannot suppose a circumstance of excuse, except the scarcely possible one of an ignorance of the consanguinity which exists between the parties, their offspring is not bastardized by our laws; on the contrary, it is expressly provided (New Code, p. 195, § 13) that the nullification of such marriages shall not be construed to render the issue illegitimate. * * * The Legislature itself has given the answer. That Legislature certainly meant not to encourage fornication, or incestuous marriages, and yet it has expressly legitimated the offspring of both.' * * *

"It is seen that our statute is practically a copy of the Virginia statute, and we conclude, therefore, that a proper construction of section 2640 of Kirby's Digest requires us to hold that the children of this second marriage are legitimate, and are entitled to share as such in the division of the estate of Frank Miller."

Likewise, to the same end, this brief quotation from the Supreme Court of Montana in the Welch Case is made: "To be sure, he might have entered into a pretended contract of marriage with Esther O'Brien, she being capable of entering into marriage with him and intending in good faith to marry him— for illustration, he might have gone through

the form of a ceremonial marriage with her, or, following an actual and mutual agreement to marry her, have publicly assumed marital relations with her. Thus there would have been a marriage 'null in law,' and the children would have been legitimate. Section 7074, R. C. 1921; 7 C. J. 948; 3 R. C. L. 723."

So, conceiving the public policy of Texas on this subject to be the same as that of Virginia, whose original statute concerning it— the work of a committee of which Thomas Jefferson himself was a member (Ives v. Mc-Nicoll, supra)—seems·to have been borrowed by us as early as 1840 (James v. James [Tex. Civ. App.] 253 S. W. 1112, 1113), it is held that the appellee here was legitimate.

The procedural questions raised are disposed of in the order presented as follows:

■ 1. In the first place it is not shown, either in the statement of facts, by bill brought here, or otherwise, that any exception was preserved to anything complained of in the fifth proposition; wherefore nothing touching the matter is presented for review here. But, if it had been, the objection now offered could not be sustained, because it seems clear, not only that the trial court excluded such portions of Eula Miranda's testimony as amounted to conclusions, but also that the following testimony from her, additional to that quoted in appellants' brief, shows she did remember the essentials of an agreement between herself and Gus Defferari to live together as husband and wife:

"Q. What did he say about it, if you can remember what he said? A. The only thing I can say he just wanted to get this house for me and we would live there together as man and wife. That is all I can tell you.

"Q. Well, did he say that? A. Yes, sir.

"Q. Now, what did you do after that time? A. Well, we went to 26th & Church and lived there together, where my daughter was born."

■ 2. The trial court correctly excluded the Galveston city directories of 1905 to 1914, inclusive, offered as evidence of things alleged to have occurred years before this controversy arose, because there was no testimony as to where or from whom the matter therein appearing was obtained, or that it was correct, while at the same time ·it affirmatively appeared from the manner in which the directories were shown to have been compiled that the information thereby offered was clearly hearsay. Article 2237, R. S. 1925, as amended by Acts 1931, 1st Called Sess., c. 34, § 1 (Vernon's Ann. Civ. St. art. 2237); Venting et al. v. Carrigan (Tex. Civ. App. 1930) 26 S.W. (2d) 711; Creosoted Wood Block Paving Co. v. McKay (Tex. Civ. App. 1919) 211 S. W. 822.

■ 3. The trial court prefaced each special issue to the jury with the wording "Do you find from a preponderance of the evidence * * *" the facts sought to be elicited, as the issues quoted, supra, show; since, therefore, the jury could find in the appellee's favor only from a preponderance of the evidence, it was not essential that they be in so many words further told that the burden of proof was upon the appellees. Gilmer v. Graham (Tex. Com. App.) 52 S.W.(2d) 263; Federal Surety Co. v. Smith (Tex. Com. App.) 41 S.W.(2d) 210; Texas Indemnity Co. v. Bridges (Tex. Civ. App.) ·52 S.W.(2d) 1075; Continental Oil Co. v. Berry (Tex. Civ. App.) 52 S.W.(2d) 953; H. W. Broaddus Co., Inc., v. Binkley et al. (Tex. Civ. App.) 54 S.W.(2d) 586; Texas & Pacific Ry. Co. v. Bufkin (Tex. Civ. App.) 46 S.W.(2d) 714; City of Waco v. Diamond et al. (Tex. Civ. App.) 46 S.W.(2d) 1049; Runnells Chevrolet Co. v. Clifton (Tex. Civ. App.) 46 S.W.(2d) 426; Commercial Standard Ins. Co. v. Bessent (Tex. Civ. App.) 37 S.W.(2d) 789; Speer's Law of Special Issues in Texas, §§ 133. 134.

■ 4. The sound discretion of the trial court is not found to have been abused in refusing a new trial because of the alleged newly discovered testimony of the witnesses Joe Shannon· and Tracy Merrick, as well as of certain chattel mortgages, claimed to have been signed by appellee's mother as a single person during the time of her living with Gus Defferari; no facts showing the use of proper diligence to discover such evidence before the trial being set out in the motion. Burnley v. Rice, Adams & Co., 21 Tex. 171 (1858); Traylor v. Townsend, 61 Tex. 144 (1884); Gulf, C. & S. F. Ry. Co. v. Blanchard (Tex. Civ. App. 1903) 73 S. W. 88; Houston & T. C. Ry. Co. v. Hollis (1884) 2 Willson Civ. Cas. Ct. App. § 218; New Trial, ■ (4), 18 Tex. & S. W. Dig. Further, it is not made clearly to appear that such so-called evidence would probably have produced a different result upon another trial. Griffith v. Gohlman, Lester & Co. (Tex. Civ. App.) 253 S. W. 591; Western Union Tel. Co. v. Hardison (Tex. Civ. App.) 101 S. W. 541, error refused.

These mortgages were shown to have been on file for a long time prior to this trial in the county clerk's office, along with the certificate as to the date of the appellee's birth, which the appellants had introduced in evidence, wherefore they were presumed to have been acquainted with them. Vardeman v.

Edwards, 21 Tex. 737; Johnson v. Flint, 75 Tex. 379, 12 S. W. 1120; Simonton v. Perry (Tex. Civ. App.) 62 S. W. 1090. Furthermore, they were merely cumulative of much similar matter, such as the deeds and deed of trust, that were in evidence, and it appears that appellants' counsel knew of Eula Reese, with reasonable ground for believing her to be the appellee's mother, long before the trial. Tracy Merrick's name appeared on several of these mortgages; hence it would seem that he could have been located and his connection with the transactions obtained in advance. A controverting affidavit was filed attacking the other witness' reputation for truth and veracity, as the law provides may be done, and also setting up matters obtained from him tending to limit and qualify the affidavit previously given by him. S. A. Gas Co. v. Singleton, 24 Tex. Civ. App. 341, 59 S. W. 920.

These conclusions require an affirmance of the judgment; it has been so ordered.

Affirmed.