R. Tilda Bull v. R. V. Bull et al.

Decided May 24, 1902.

1.—Marriage—Presumption—Cohabitation.

Where there was a second marriage invalid because of the fact of a former marriage, without divorce, and the former husband then still living, and the woman's second marriage relation continued for several years after the death of the first husband, the second husband treating her at all times as his wife, it will be presumed, in the absence of evidence to the contrary, that there was a good statutory or common law marriage after the death of the first husband such as gave her homestead rights in the lands of the second husband.

2.—Same—Common Law Marriage.

The doctrine of a common law marriage by cohabitation is recognized in this State. Following Ingersol v. McWillie, 9 Texas Civil Appeals, 543.

Appeal from Erath. Tried below before Hon. W. J. Oxford.

*H. H. Cooper* and *Parker, Carlton & Carter,* for appellant.

*Eli Oxford,* for appellees.

CONNER, Chief Justice.—This is a suit by the surviving children and heirs of John W. Bull, who died on the 11th day of February, 1898, to recover the title and possession of 160 acres of land of which appellant was in possession claiming the homestead right therein as the surviving wife of said John W. Bull. In addition to the usual averments of a petition in trespass to try title appellees specially alleged, among other things: "That on the 18th day of December, 1886, the said John W. Bull entered into a pretended marriage with the defendant R. Tilda Bull. That at the time of said pretended marriage with defendant she was then lawfully married to one Long, who was then living, and that defendant had never been divorced from said Long at the time she entered into said pretended marriage with the said John W. Bull. That the defendant knew at the time she entered into said pretended marriage with the said John W. Bull that she was not divorced from said Long, and that she knew where the said Long was at that time. That said pretended marriage and alliance was illegal and was null and void and is of no force and effect. That after said pretended marriage the said

John W. Bull moved the defendant upon the premises above described and there cohabited with her under circumstances which constituted bigamy on the part of the defendant up to the time of the death of the said John W. Bull. That by reason of said illicit cohabitation of the defendant with the said John W. Bull she has violated the criminal laws of this State and has committed a felony known as the offense of bigamy, and but for the statute of limitation she would be liable to prosecution and conviction for said crime above named. That defendant by reason of said cohabitation with the said John W. Bull has acquired no homestead rights under the laws of this State."

The trial was before the court without a jury, and the judgment in appellees' favor is here assailed on the ground that the evidence is insufficient to sustain it on the issue presented by the special plea above quoted. The evidence on the issue indicated consists of an ex parte deposition of appellant taken in behalf of appellees March 31, 1900, which is as follows: "My name is R. Tilda Bull. I was 72 years old the 12th day of January, 1900. I now reside on my homestead on Pony Creek, in Erath County, Texas. I have been here thirteen years on the 18th day of December, 1889. I have been married three times. My first husband's name was Berry Hill. He is dead. He died in Tennessee, on Duck Creek, during the civil war. I was married to a man by the name of Long. He was my second husband. He is dead. I do not know when he died, but it seems to me that he died about four years ago. I was not present at his death or burial or either of them. I do not know where he was buried if he is dead. I can not give the names of some of the parties who attended his death and burial, for I was here in Texas and he was in Alabama. I was married to Long in Franklin County, Alabama. The marrige license issued from Franklin County, Alabama. A Baptist preacher by the name of Finey performed the ceremony. I was only divorced by the laws of Alabama, which say seven years would divorce couples. No suits were brought by the court for a divorce that I know of. If Long sued for a divorce I don't know where it was. No citation or process of the court was ever served on me. I have no copy of citation or decree of divorce from him. I was separated from Long, but do not know that there was ever any divorce, nor have I sued for a divorce that I know of. I don't know where he is now living. Long was at my house one time after my marriage to John W. Bull. That was on the place that I now live. He was never in the house. He just came to the gate. It was five or six years past. I do not remember the exact date. I never knew what he came here for, as I did not speak to him. John Underwood was here, and I think he talked to him. I was married to John W. Bull about thirteen years ago, in Hood County. I know A. P. Payne, who now lives at Breckenridge, Stephens County, Texas. I have known him ever since we were children. His two sons married my two daughters. They were also the daughters of Long; their names were Annie and Fannie."

It may be assumed that this evidence, unexplained, supports appellees' contention that appellant was the lawful wife of Long at the date of her marriage to Bull in 1886, and that therefore the latter marriage was invalid, but if so it does not necessarily follow that she was not the lawful wife of John W. Bull at the date of his death, on February 11, 1898. If at the latter date she was Bull's lawful wife her possessory, homestead right to the land in controversy must be conceded notwithstanding the invalidity of the original marriage to Bull, as the evidence on this point leaves no room for doubt; so that the vital question for our determination is whether the evidence cited is sufficient to exclude the presumption that we think must be entertained in favor of appellant's lawful status at the date of Bull's death. We have concluded that it is not, and that the judgment must be reversed.

In Carroll v. Carroll, 20 Texas, 732, the death of Jabez Saunders after seven years separation was presumed in favor of the legality of the subsequent marriage of his wife Susan to N. H. Carroll. A like presumption was indulged where there was no evidence of the existence of the first wife for four years prior to the second marriage in the case of Yates v. Houston, 3 Texas, 433, it being held that the presumption in favor of the continuance of human life should not outweigh the presumption of the innocence of cohabitation.

A like presumption was indulged in the case of Hull v. Rawles, 27 Mississippi, 471. The court in that case say: "The fact that the deceased (Rawles) was living in 1844 with a woman believed to be his wife is no evidence that she was living on the 6th day of December, 1848 (the date of the subsequent marriage). * * * It may be true that the first wife was then living, and still it would not necessarily follow that she was in a legal sense his wife, as the parties may have been legally divorced."

The case of Klein v. Laudman, 29 Missouri, 259, involved the legality of the marriage of Margaret Klein to Leonard Klein. It was shown that prior to this marriage Margaret admitted that previous to her marriage with Leonard Klein she had been married in Germany to another man. The trial court in its instruction to the jury proceeded upon the theory that if the jury should find that Margaret Klein was married in Germany to another person than Leonard Klein that this marriage relation was presumed to continue. The Supreme Court of Missouri, however, held that: "There was no presumption that a marriage, which was proved to have existed in Germany, continued to exist here after positive proof of a second marriage de facto here. The presumption of law is, that the conduct of parties is in conformity to law, until the contrary is shown. That a fact, continuous in its nature, will be presumed to continue after its existence is once shown, is a presumption which ought not to be allowed to overthrow another presumption, of equal if not greater force, in favor of innocence. * * * There was not any evidence in this case, so far as the bill of exception shows, that the first husband of Mrs. Klein was still living; but if this had been

established, we think she was still entitled to the benefit of the favorable presumption that the first marriage had been dissolved by a divorce, and that it was not incumbent on her, in this character of action and under the pleadings in this case, to produce a record of the judicial or legislative proceedings by which the divorce was effected."

The doctrine of presumption in cases like the one before us is perhaps still more forcibly illustrated in the case of Blanchard v. Lambert, 43 Iowa, 228, and cases therein cited. In that case Mrs. E. K. Blanchard claimed rights dependent upon a lawful marriage with one I. D. Blanchard. It was shown that on the 24th day of May, 1857, she had married one Horatio Musgrave and cohabited with him as his wife for about one year, when they separated. In March, 1867, the marriage with I. D. Blanchard occurred, and she lived with him as his wife until his death, August 14, 1872. No divorce was shown, but it further appeared that Musgrave died in June, 1871, and that the plaintiff in that case, Mrs. E. K. Blanchard, and I. D. Blanchard thereafter continued to live together as husband and wife until Blanchard's death in August, 1872. The court say: "During this time Blanchard introduced the plaintiff as his wife; he called her "ma" when speaking to one of the family; when speaking to strangers he called her "his wife." They lived happily together, and treated each other with mutual respect. During the last sickness of deceased, which lasted about ten months, the plaintiff sat up with and waited on him, and in all respects treated him as a lady would her husband. She was treated in the community with respect, and was recognized as the wife of deceased. Blanchard made a will in which he mentions plaintiff as his wife. * * * Under these circumstances, even if the marriage were originally void, a subsequent marriage will be presumed to have occurred after the removal of all legal impediments by the death of Musgrave, in June, 1871." The cases of Fenton v. Reed, 4 Johns., 51; Rose v. Clark, 8 Paige Chan. Rep., 573-579; Jackson v. Claw, 18 Johns., 347, and Wilkinson v. Payne, 4 Durn. & East's Rep., 468, were all cited as having announced the same doctrine.

In the case of Wilkinson v. Payne, supra, it was said that the marriage was absolutely void under the English marriage acts by reason of the minority of the husband at the time. When he became of age his wife was upon her deathbed, and she died in three weeks from that time. But upon proof that the father of the wife, who was the defendant in the suit, and the rest of the family, had always treated them as husband and wife, it was left to the jury to presume a legal marriage after the husband was of age, and they did so. The court of king's bench refused to disturb their verdict. In the case of Teter v. Teter, 101 Indiana, 129, a good common law marriage was presumed after the removal by divorce of the impedient of a formal marriage. Other cases might be cited, but we think these sufficient to justify our conclusion.

The fact that appellant lived with John W. Bull for thirteen years as his wife is not disputed, and if, as stated; it be assumed that Mrs. Bull's testimony as above quoted establishes the validity of her marriage

with Long, and that it is sufficient to show that no divorce between her and Long was ever had by decree of court, or otherwise, the fact is nevertheless undisputed that Long died several years prior to the death of John W. Bull. We find no evidence whatever to indicate that Bull at any time during his relations with appellant did otherwise than claim her as his wife, but to the contrary. The fact that Long appeared at the home of Bull and appellant seems to have produced no disturbance in the community or in the relation asserted by appellant. It is perhaps, also, to be inferred from a verified motion made by appellant for a new trial explaining her inability to attend the trial below and the reason for not having been represented at the time by counsel, that during the time appellant and John W. Bull lived together as husband and wife common fruits of their labor were invested by them in improvements upon the property in controversy, and while there is no plea setting up such equities, we think under the circumstances that before the imputations of appellees' special plea should be affirmed by a solemn decree of the court and this aged woman probably rendered homeless during the few remaining years of her life, the appellees should discharge the burden that was upon them to exclude every reasonable presumption in favor of the innocence of appellant and of their father, John W. Bull. The doctrine of a common law marriage has repeatedly been recognized in this State (Ingersol v. McWillie, 9 Texas Civil Appeals, 543; Cumby v. Henderson, 6 Texas Civil Appeals, 519), and in the absence of proof to the contrary we will presume, under the circumstances of this case, a good statutory or common law marriage between appellant and John W. Bull after the unquestioned removal of all legal impediments thereto.

The foregoing views render it unnecessary to pass upon the action of the court in overruling appellant's motion for a new trial, and it is ordered that the judgment be reversed and the cause remanded.

Reversed and remanded.