ROBINSON v. CASEY et al.    (No. 2482.)

(Court of Civil Appeals of Texas. Amarillo.
April 29, 1925. Rehearing Denied
May 13, 1925.)

**1. Marriage 50(5)—Finding that there was no common-law marriage sustained.**

Where a married man had been living with a woman before his divorce, and they masqueraded as husband and wife prior thereto, finding of jury that after his divorce there was no mutual agreement with bona fide intention of entering into marital relation so as to constitute common-law marriage *held* sustained under evidence.

**2. Trial 129—Argument of counsel on "free love" not prejudicial, where in response to argument of opposing counsel.**

Where issue was whether a common-law marriage had been consummated, argument of counsel as to the dangers of the state of free love *held* not prejudicial, where provoked by argument of opposing counsel advocating what might be called free love, especially where court instructed, and counsel requested, jury not to consider remark and proper instructions as to common-law marriage were given; "free love" being the doctrine of consorting with the opposite sex at pleasure without marriage.

**3. Trial 133(6)—Improper argument cured by seasonable instructions to disregard.**

Improper argument of counsel to jury is cured, where court, immediately after objectionable remarks, instructs jury not to consider them for any purpose.

**4. Appeal and error 930(2)—Jury is presumed composed of men of ordinary intelligence.**

A jury will be presumed to be composed of men of ordinary intelligence.

Appeal from District Court, Young County; H. R. Wilson, Judge.

Application by A. C. Casey, temporary administrator, for appointment as permanent administrator of the estate of M. C. Robinson, deceased, opposed by Nora Lee Robinson, who made application for appointment in her own behalf, which application was resisted by Annie Robinson, as guardian, and others. Order appointing applicant first named was affirmed by the district court, and Nora Lee Robinson appeals. Affirmed.

Ocie Speer and Hunter P. Lane, both of Fort Worth, for appellant.

Fred T. Arnold and S. A. Penix, both of Graham, and Sam P. Shadle, of Weatherford, for appellees.

JACKSON, J. This is an appeal from a judgment rendered in the district court of Young county, Tex.

M. C. Robinson died intestate in Young county, Tex., on the 7th day of October, 1923,

leaving an estate of the estimated value of $40,000.

On the 15th of October, 1923, A. C. Casey made application to be, and was appointed, temporary administrator of the estate of M. C. Robinson, deceased, and asked that proper notice of his application be given, and his appointment be made permanent at the next regular term of the court.

On December 31, 1923, Nora Lee Robinson filed a contest to the appointment of A. C. Casey as permanent administrator, and asked that she be made permanent administratrix of said estate. She based her right to be administratrix on her claim that she was the surviving common-law wife of M. C. Robinson, and, as such, had the preference right to be awarded letters of administration.

On January 24, 1924, the 2 minor children of the deceased, acting by their guardian and mother, Mrs. Annie Robinson, the divorced wife of the deceased, together with Ethel Bishop, and her husband, J. W. Bishop, J. E. Robinson, and Elbert Robinson, 3 of the adult children of the deceased, and Mrs. Annie Robinson, filed their resistance in the county court to the appointment of Nora Lee Robinson as permanent administratrix, asking that such suitable person as the court might determine be granted letters of administration. In this resistance they were joined by Mrs. L. B. Downey and her husband, B. D. Downey, Mrs. Allie Bailey, and her husband, M. E. Bailey, Mrs. L. H. Tepfer and her husband, L. H. Tepfer, Lee Robinson, and Arlie Robinson, the other 5 adult children of M. C. Robinson, deceased, and Mrs. Annie Robinson, asking that A. C. Casey be made permanent administrator of the estate of their deceased father.

The grounds of the opposition by the children to the appointment of Nora Lee Robinson is, as alleged, that she is Nora Lee Flowers, and is not, in truth and in fact, the surviving widow of M. C. Robinson, deceased; never having been married to him, not being related to him, and not being interested in the estate, and therefore not entitled to letters of administration.

On January 28, 1924, the contest was heard by the county court, sitting in probate, and Nora Lee Robinson was denied letters of administration, and A. C. Casey was made permanent administrator, on his application.

From this judgment Nora Lee Robinson prosecuted her appeal to the district court of Young county, Tex., and in the trial in that court the judgment of the probate court was affirmed, from which action of the district court the case is properly before us for review.

In the district court but one issue of fact was submitted to the jury, to which they answered that Nora Lee Robinson and M. C. Robinson, deceased, did not mutually agree

and consent with each other on or after September 13, 1923, to become husband and wife, with the intention at that time of living and cohabiting with each other as husband and wife. On this verdict the court decreed that Nora Lee Flowers is not the surviving wife of M. C. Robinson, deceased, and has no preference right to be appointed administratrix of his estate, which consists of real and personal property situated in Young county, Tex., of the approximate value of $70,000, with an indebtedness of approximately $35,-000, which renders an administration on the estate necessary; that he left 10 surviving children, his closest relatives, who have each waived the right to be appointed by the court in favor of A. C. Casey, who is in no way disqualified, and adjudged A. C. Casey as permanent administrator of the estate of M. C. Robinson, deceased, and in all things affirmed the action of the county court.

We will hereafter designate Nora Lee Robinson appellant and A. C. Casey et al. appellees.

[1] Appellant, by her first assignment of error, assails the finding of the jury and the judgment of the court, because of the insufficiency of the evidence to sustain the verdict and judgment.

The record reveals that M. C. Robinson and his divorced wife, Mrs. Annie Robinson, were married November 24, 1887, and to them 12 children were born, 10 of whom survive, and are contesting the appointment of appellant, as administratrix of their father's estate.

On September 13, 1923, Mrs. Annie Robinson was granted a divorce from her husband, M. C. Robinson, by the district court of Young county.

In 1920 appellant moved into a house in Mineral Wells, owned by the deceased, where he often visited her, and for the use of which house no rent was paid after about two months. In January, 1922, she moved into a house at Graham, Tex., owned by the deceased, in which they lived together in adultery until September 13, 1923, the date deceased was divorced from his wife, Mrs. Annie Robinson. During the time they lived in Graham deceased furnished the house in which he and appellant lived, gave her an automobile, bought her clothes, paid her bills, and permitted her to draw checks on his bank account. During this time they visited different cities in Texas, and also went to the state of California and the state of Oklahoma, masquerading as man and wife, and introducing each other to people as such.

On the day the divorce was granted to Mrs. Annie Robinson, the deceased, in company with his brother, returned to the house in which he and appellant were living; he hugged and kissed her, saying: "I am a free man." Appellant replied: "You don't mean that all together," and he answered: "I mean all but you. I am not tied to any one but you."

This language could not have any reference to any legal or marital ties existing between M. C. Robinson and appellant, for up to that time there had existed the impassable impediment of the continuance of the legal marriage between the deceased and his former wife, Mrs. Annie Robinson.

In this conversation, or about the time thereof, deceased told appellant, according to her testimony, that, if she would do all right, as she had always done, he was willing to take care of her the rest of her life. They talked over a regular marriage, but decided that having a regular marriage would only be to satisfy people who were talking, and they did not care to please others, but wanted to please themselves, and agreed to go and live, as they were, together, just like they had before, but that they would be as man and wife, and he would introduce her to people as such.

After the divorce decree deceased said to his brother that appellant was his second wife. To one other party in Graham, where they had lived from January, 1922, he called appellant his wife. They visited together at Munday and at Mineral Wells, where to a few people they introduced each other as man and wife, and deceased called appellant his wife to one person in Fort Worth.

There was no change so far as this record discloses in the relation, actions, conduct, or representations of appellant and deceased toward each other subsequent to the divorce and before his death and prior to the date the divorce was granted.

The testimony offered by appellees shows that after the 7th day of October, 1923, the date of the death of M. C. Robinson, appellant said to more than one person, on more than one occasion, that the death of deceased had interfered with her plans, as he and she had intended to go to California and get married; that appellant claimed certain property which she had in her possession at his death, not as the wife of deceased, but as a gift from him, and in an effort to adjust the title to said property with the temporary administrator she signed and acknowledged a written instrument, using the name Nora Lee Flowers, and permitted herself to be introduced to people by the name of Flowers; that M. C. Robinson told his brother after the divorce that he and appellant were going to California, and said something about marrying appellant.

Deceased, after being wounded on October 7th, lived several hours, was conscious, and a doctor, his brother, appellant, and others saw and conversed with him about his condition and his business, and about appellant, and it is significant, under the circumstances, that neither deceased nor appellant men-

tioned to any one during that time that she was his wife.

The illicit relations between appellant and the deceased having begun, according to her admissions, at a time when she knew the deceased was lawfully married to another, and she having lived with him in adultery, and masqueraded as his wife prior to the divorce, and being introduced to people as his wife during the continuance of this meretricious relation, the testimony to show a bona fide change from this relation of mistress to lawful wife is so uncertain and unsatisfactory and of such slight probative force that a jury could have found, without testimony independent of that offered by her, that there was no mutual agreement between her and deceased, with a bona fide intention of entering into the marital relation.

In our opinion, the verdict of the jury is amply sustained by the evidence, and this assignment is overruled. Grisby v. Reib, 105 Tex. 597, 153 S. W. 1124, L. R. A. 1915E, 1, Ann. Cas. 1915C, 1011; Berger v. Kirby, 105 Tex. 611, 153 S. W. 1130, 51 L. R. A. (N. S.) 182; Schwingle v. Keifer et al., 105 Tex. 609, 153 S. W. 1132; Cuneo v. De Cuneo, 24 Tex. Civ. App. 436, 59 S. W. 284; Whitaker v. Shenault (Tex. Civ. App.) 172 S. W. 202; Bell v. Southern Casualty Co. (Tex. Civ. App.) 267 S. W. 531.

[2] Appellant's only other assignment assails as reversible error the language used by the attorney for appellees in his argument to the jury which, according to the record, was:

"Gentlemen of the jury, if you believe the argument of Judge Lane made in this case, and we go to the state of free love and disregard all the sanctity of the home and home life, we are drifting far afield. When this state of conditions exists all over the land, we had just as well call the grand dragon and the imperial wizard, assemble the night hawks, and page the grand keeper of the tar barrel, for this will be our only protection."

Counsel for appellant objected to this statement upon the ground that it was unauthorized by the evidence, was highly inflammatory, and prejudicial to the rights of appellant.

In explanation of the bill of exceptions, which is the basis for this assignment, the court says that the attorney for the appellant, Hunter P. Lane, in his opening address to the jury had made quite an argument advocating what might be called free love, and in answering this argument Fred T. Arnold, counsel for appellees, used the language shown in the bill; that, when the objection was made, he instructed the jury orally not to consider the remark for any purpose, counsel for appellees also begged the jury to forget the remarks and not to consider them; and that no written application was made for any instructions at all, and no further instructions were given.

We are not advised what the remarks of Mr. Lane, the counsel for appellant, were which elicited the reply of Mr. Arnold of which complaint is made, except the court, in his qualification to the bill, states that in the opening speech Mr. Lane had made quite an argument dealing with what might be termed free love.

Mr. Webster defines free love as "the doctrine or practice of consorting with the opposite sex at pleasure, without marriage."

The doctrine or practice of free love then is opposed to wedlock, antagonistic to marriage, whether under the common-law system or by ceremony; consequently such doctrine is a menace to government, society, and civilization, because Judge Brown, in the case of Grisby v. Reib, supra, says marriage is more than a civil contract, it is "a status ordained by God, and the foundation and support of good government, and absolutely necessary to the purity and preservation of good society."

An argument on the doctrine or practice of free love would therefore be outside the record, because a common-law marriage presupposes and demands the same fidelity and the same loyalty as a marriage by ceremony. This argument on free love was not warranted by the testimony, and, according to the record, provoked the statements of Mr. Arnold, and the reply to such argument was not, in our opinion, beyond the bounds of a legitimate answer. Trinity Lumber Co. v. H. S. Denham, 88 Tex. 203, 30 S. W. 856; Panhandle & S. F. Ry. Co. v. Huckabee et ux. (Tex. Civ. App.) 216 S. W. 666; Schmidt v. Houston Elec. Co. (Tex. Com. App.) 242 S. W. 1019; Railway Co. v. Hagan (Tex. Civ. App.) 188 S. W. 954; W. T. Wilson Grain Co. v. Fitch (Tex. Civ. App.) 208 S. W. 556; Willis & Bro. v. McNatt & March, 75 Tex. 69, 12 S. W. 478; Jaffe v. Deckard (Tex. Civ. App.) 261 S. W. 391.

[3] The trial court promptly, on objection by counsel for appellant to the argument complained of, orally instructed the jury not to consider such remarks for any purpose, and counsel making the argument requested the jury to forget the remarks and not consider them.

Our courts have frequently announced the rule that a judgment will not ordinarily be reversed on account of improper argument, if the court, immediately on the making of the remarks that are objectionable, instructs the jury not to consider the argument for any purpose, and such remarks are withdrawn. G., C. & S. F. Ry. Co. v. Johnson, 83 Tex. 628, 19 S. W. 151; Galveston H. & S. A. Ry. Co. v. Duelin, 86 Tex. 450, 25 S. W. 406; International & Great Northern Ry. Co. v. Mercer (Tex. Civ. App.) 78 S. W. 562; City of Dallas v. Maxwell et ux. (Tex. Civ. App.) 231 S. W. 429; American Railway Express Co. v. Truede (Tex. Civ. App.) 246 S.

(272 S.W.)

W. 1088; Brown et al. v. Perez, 89 Tex. 282, 34 S. W. 725.

The court, in connection with the issue submitted, said in his charge to the jury:

"You are instructed that a common-law marriage is legal and binding, and valid under the law of Texas; and neither the issuance of license nor a ministerial or official ceremony is necessary to constitute a lawful and binding common-law marriage. It is necessary, to constitute such a marriage, that the parties mutually agree and consent together to become husband and wife, and thereafter carry out the agreement, and live and cohabit together as husband and wife. To cohabit, as that term is used herein, means to live together, claiming to be married, in the relation of husband and wife, doing those things usually done by husband and wife, publicly acknowledging each other as such, and recognizing the validity of their relation."

With this definition before the jury, to which no objection is made, they were fully informed as to the law by which they would be governed in determining whether or not appellant and deceased, M. C. Robinson, had entered into a common-law marriage.

[4] Assuming, as we must, in passing upon the effect of the argument complained of, that the jury was composed of men of ordinary intelligence (Vaello v. Rodriquez [Tex. Civ. App.] 218 S. W. 1083), considering the charge given, the uncertainty and unsatisfactory testimony relied on by appellant to show a common-law marriage, the promptness of the court to act when objection was made to the provoked argument of counsel for appellees, and the opportunity of the district judge to observe and determine whether any injury resulted to appellant, in the minds of the jury, by the remarks complained of (Brown v. Perez, 89 Tex. 282, 34 S. W. 725), it is our opinion that the argument of counsel for appellees did not constitute reversible error.

The judgment is affirmed.