Barbara L. LESTER, As Next Friend of William B. Lester, Jr., and Sherry Lester, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.

No. LR–62–C–177.

United States District Court E. D. Arkansas, W. D.

Sept. 20, 1963.

608

M. Jack Sims, of Pope, Pratt & Shamburger, Little Rock, Ark., for plaintiff.

Robert D. Smith, Jr., U. S. Atty., Charles Mott, Jr., Asst. U. S. Atty., Little Rock, Ark., for defendant.

HENLEY, Chief Judge.

Plaintiff, who for convenience will be referred to generally as Mrs. Lester, has brought this action to secure a judicial review of the final decision of the Secretary of Health, Education and Welfare, acting through the Social Security Administration, that her children, William B. Lester, Jr. and Sherry E. Lester, are not entitled to Child's Insurance Benefits as provided by section 202(d) of the Social Security Act, as amended, 42 U.S.C.A. § 402(d). The claim for benefits was based on the fact that both of the minors here involved are the natural children of William B. Lester, who died in January 1961 while a domiciliary of Arkansas. At the time of his death Lester was fully covered by the Act. Jurisdiction of this Court is predicated upon section 205(g) of the Act, 42 U.S.C.A. § 405(g).

The claim was denied originally by the Bureau of Old Age & Survivors Insurance, Social Security Administration, on the basis of its finding that neither William B. Lester, Jr. nor Sherry E. Lester was a "child" of William B. Lester within the meaning of the Act, although there was no question that he was the natural father of both children. After the Bureau's initial denial of the claim, and after the Bureau had refused to reconsider its decision, plaintiff sought and obtained a hearing before a Hearing Examiner of the Administration's Bureau of Hearings & Appeals. Plaintiff appeared at the hearing without counsel. She testified in support of the claim and also offered documentary evidence. Upon consideration of the materials before him the Examiner denied the claim, and the Administration's Appeals Council refused to review his decision. That action of the Appeals Council constituted a "final decision" of the defendant Secretary, which is subject to review by this Court.

Section 216(e) of the Act defines a "child" as including "the child or legally adopted child of an individual," and section 216(h) (2) (A) provides that in determining whether a child for whom an application for Child's Insurance Benefits is made is a "child" of the deceased wage earner within the meaning of the law there shall be applied "such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which (the wage earner) * * * was domiciled at the time of his death * * *." And it is further provided that if the child in question "according to such law would have the same status relative to taking intestate personal property as a * * * child * * * (he) shall be deemed such."

Under Arkansas law only legitimate children can inherit personal property from their father in the event of his death intestate. The Examiner found that both children were illegitimate at birth, and that they were never legiti-

matized; that since under Arkansas law they could not inherit personal property from their father, neither of them was entitled to Child's Insurance Benefits under the Act.

The facts in the case are without substantial dispute.

In 1958 William B. Lester was a married man residing in or near Hot Springs, Arkansas. The name of his wife was Betty Lester. Mr. Lester and Betty Lester seem to have been estranged, and during 1958 Lester commenced an affair with plaintiff which resulted in her pregnancy. While she was carrying on the affair with Lester, and at the time she became pregnant, Mrs. Lester knew that Mr. Lester was not divorced.

Prior to the birth of the child Mr. Lester left Arkansas and went to Austin, Texas, where he found work. Mrs. Lester followed him there, but he sent her back to Hot Springs. Later she went to Fort Worth, Texas, where on December 14, 1958, she gave birth to a son, who was given the name of William B. Lester, Jr.

On March 1, 1959, the wage earner came to Fort Worth, picked up Mrs. Lester and the baby, and took them to Austin where he established a home. Mr. and Mrs. Lester held themselves out as husband and wife, and he recognized his paternity of the child. The Lesters remained in Austin until sometime in August 1959 when they returned to Hot Springs or its vicinity.

In the meantime Betty Lester had filed a suit for divorce against Mr. Lester who, it appears, executed a waiver of notice and process and entered his appearance in the case. On March 10, 1959, the Chancery Court of Garland County, Arkansas, where the suit was filed, which County has Hot Springs for its county seat, entered a decree awarding Betty Lester an absolute divorce from Mr. Lester. Mr. Lester was not notified of the rendition of this decree and never learned of it. Mrs. Lester did not learn that Mr. Lester had been divorced until after his

death in 1961. In September 1960 Betty Lester wrote a letter to Mr. Lester to the effect that she had not been divorced due to the fact that she had not been able to pay her attorney his fee. Although Mr. and Mrs. Lester returned to Garland County in August 1959 neither of them made any effort to ascertain the status of the divorce action either before or after the receipt of the September 1960 letter just mentioned. Mr. and Mrs. Lester were never ceremonially married in any jurisdiction.

Following their return to Arkansas in August 1959 Mr. and Mrs. Lester went on living together just as before. Mrs. Lester became pregnant again and on July 2, 1960, was delivered of a daughter, Sherry E. Lester. Mr. Lester recognized his paternity of the second child just as he had done in the case of the older child.

Late in 1960 Mr. Lester began to drink heavily and to abuse Mrs. Lester who finally left him, taking the two children with her. About ten days later Mr. Lester killed himself.

In passing upon the claim filed by plaintiff the Hearing Examiner considered the status of each child separately. As to the second child, who had been born in Arkansas, the Examiner stated simply that under Arkansas law a child born out of wedlock can inherit from its mother but cannot inherit from its father unless the parents later marry and the father thereafter recognizes the child as his. Ark.Stats.1947, § 61–103. Since Mr. and Mrs. Lester did not marry subsequent to the birth of the daughter, the Examiner concluded that the daughter never became legitimate and could not inherit from her father, and for that reason was not entitled to benefits under the Federal Act.

As to the other child, who was born in Texas, the Examiner was of the opinion that this child's status depended in final analysis upon the applicability to him of section 42 of the Probate Code of Texas. Vernon's Texas Civil Statutes, Vol. 17A, § 42. That section provides that if a child is born to unmarried parents, he

becomes legitimate if the parents subsequently marry.[1] The same section of the Texas Code, like Ark.Stats.1947, § 61–104, provides that the issue of marriages deemed null in law shall be deemed legitimate. The Examiner noted correctly that if William B. Lester, Jr. would be recognized as legitimate in Texas, he would be so recognized in Arkansas. Bickford v. Carden, 215 Ark. 560, 563, 221 S.W.2d 421; Leflar, The Law of Conflict of Laws, 1959, § 179, p. 344. However, for reasons to be stated the Examiner came to the conclusion that the Texas legitimation statute was not applicable to William B. Lester, Jr., and that he would be considered illegitimate under both Texas and Arkansas law, and hence was not entitled to Child's Insurance Benefits.[2]

In seeking to reverse the Examiner plaintiff contends that on March 1, 1959, she and Mr. Lester formed in Texas a relationship which under the laws of that State would have been a valid common law marriage except for the existence of the impediment consisting of Mr. Lester's prior undissolved marriage; that the dissolution of the marriage by the decree of the Arkansas Chancery Court removed the impediment; that she and Mr. Lester continued to live together as husband and wife after the removal of the impediment, and that by reason of such continued cohabitation a valid common law marriage came into existence in Texas, notwithstanding the fact that neither of the parties knew that the impediment had been removed. From these premises plaintiff argues that under Texas law the first child became legitimate when the allegedly valid common law marital status of his parents came into existence, that the second child was born legitimate, and that both children were entitled to inherit from their father under Arkansas law, and were and are entitled to Child's Insurance Benefits under the Act.

Under the express provisions of section 205(g) of the Social Security Act the factual findings of the agency are final and binding upon the courts if such findings have substantial evidentiary support in the record considered as a whole, and this finality extends to permissible inferences drawn from the evidence by the administrative fact finder. Celebrezze v. Bolas, 8 Cir., 316 F.2d 498; Hoffman v. Ribicoff, 8 Cir., 305 F.2d 1; Cody v. Ribicoff, 8 Cir., 289 F.2d 394, 88 A.L.R. 970. No such finality attaches to the agency's conclusions of law, and, as this Court has said in Lewis v. Flemming, E.D.Ark., 176 F.Supp. 872, 874, a finding or conclusion based upon an erroneous view of the law cannot be sustained. But, if it appears that the agency has reached a correct ultimate legal result on the basis of established facts, the administrative determination should be affirmed even though the reviewing court may not find itself in accord with all of the agency's reasoning in reaching that result.

Under the Social Security Act's definition of a "child," the Examiner was con-

---

1. In his opinion the Examiner stated that under Section 42 the child in question becomes legitimate if the parents subsequently marry and if the father thereafter recognizes paternity. The Court has read the section as it appears in the present Texas Code, and no requirement of subsequent paternal recognition appears therein. An editorial note following section 42 is to the effect that under prior law post-marital recognition of paternity by the father was required, but that the present section, which was enacted as part of Chapter 55 of the 1955 Acts of the 54th Texas Legislature, may have eliminated that requirement. The question is immaterial here because, as point-

ed out, Mr. Lester recognized his paternity of both children.

2. With regard to both children the Examiner considered certain documents executed by the father in which he acknowledged his paternity, and concluded that those documents were not sufficient to constitute the children the decedent's legal heirs under the provisions of Ark. Stats.1947, §§ 61–301 and 61–302. The correctness of that conclusion is not questioned and will not be discussed further. The Examiner apparently gave no consideration to the possibility of the applicability to either child of Ark.Stats.1947, § 61–104, which has been mentioned.

cerned ultimately with the rights of the respective Lester children to inherit personal property from their father under the law of Arkansas. Under settled principles of the law of conflict of laws the determination of the children's right to inherit under Arkansas law necessarily required the Examiner to consider and appraise the nature and consequences of the relationship which Mr. and Mrs. Lester assumed in Texas in March 1959 and which they maintained there until August of that year.

It is undisputed that a common law marriage may be contracted validly in Texas whereas such a marriage may not be so contracted in Arkansas. However, it is also undisputed that if parties contract a common law marriage valid in the State in which the relationship is formed, the marriage will be recognized as valid in Arkansas, and the children of such a marriage will be deemed legitimate here. Stilley v. Stilley, 219 Ark. 813, 244 S.W.2d 958; Estes v. Merrill, 121 Ark. 361, 181 S.W. 136; Evatt v. Miller, 114 Ark. 84, 169 S.W. 817, L.R.A.1916C 759; Darling v. Dent, 82 Ark. 76, 100 S.W. 747; Leflar, op. cit. § 160.

■■ It may be stated broadly that a common law marriage is more than a mere illicit relationship between a man and a woman. In order for a valid common law marriage to exist there must be an agreement, express or implied, between the parties to live presently together as husband and wife, followed by co-habitation as such. 35 Am.Jur., Marriage, §§ 28 et seq. And it has been held repeatedly in Texas that in order to constitute a valid common law marriage three essential elements must exist: (1) The parties must agree, expressly or by implication, to become husband and wife *in praesenti;* (2) They must cohabit together as husband and wife; (3) They must hold themselves out as husband and wife. Shelton v. Belknap, 155 Tex. 37, 282 S.W.2d 682; Grigsby v. Reib, 105

Tex. 597, 153 S.W. 1124; Rush v. Travelers Insurance Co., Tex.Civ.App., 347 S.W.2d 758; Williams v. Williams, Tex. Civ.App., 336 S.W.2d 757; De Shazo v. Christian, Tex.Civ.App., 191 S.W.2d 495; Martinez v. Martinez, Tex.Civ.App., 6 S. W.2d 408; Bell v. Southern Casualty Co., Tex.Civ.App., 267 S.W. 531.

■■ In Texas a valid common law marriage presupposes parties competent to contract a marriage, and a purported common law marriage which is bigamous due to the existence of a living spouse of either of the parties is void. Barker v. Lee, Tex.Civ.App., 337 S.W.2d 637; Defferari v. Terry, Tex.Civ.App., 68 S. W.2d 253. And a mere living together without present marital intent is not sufficient to constitute a valid common law marriage even though there may be present an intent to marry sometime in the future. Grigsby v. Reib, supra; Nelson v. State, 84 Tex.Cr.R. 219, 206 S. W. 361.

■ As has been seen, section 42 of the Probate Code of Texas provides that an illegitimate child becomes legitimate if the parents subsequently marry, and the Court is willing to assume that this section applies in cases of subsequent common law marriages as well as in cases of subsequent ceremonial marriages. But such a statute presupposes a valid subsequent marriage whether common law or ceremonial, 7 Am.Jur., Bastards, § 58, p. 666, and applies only to children born before the marriage. Cf. Jacobs v. Jacobs, 146 Ark. 46, 225 S.W. 22.

From what has been said up to this point it is clear that if while in Texas from March to August 1959 Mr. and Mrs. Lester contracted a valid common law marriage or acquired a valid common law marital status, the first child, unquestionably illegitimate at birth, was legitimatized under the terms of section 42 of the Probate Code, and the second child was legitimate from birth.[3] On

---

3. In dealing with the second child the Examiner seems to have thought that her having been born in Arkansas was of it-

self fatal to her claim. If the Examiner was in fact under that impression, he was wrong. If Mr. and Mrs. Lester had a

the other hand, if plaintiff and Mr. Lester never had a valid common law marriage in Texas, the first child was not made legitimate by section 42 of the Probate Code, and neither child would be considered legitimate in Arkansas unless Ark.Stats.1947, § 61–104, can be held applicable here to one or both of the children.

The relationship which Mr. and Mrs. Lester assumed in Texas in March 1959 was not a valid common law marriage at its inception because Betty Lester was still alive and her marriage with Mr. Lester had not been dissolved, facts known to both Mr. and Mrs. Lester. However, as indicated, the impediment to the marriage of Mr. and Mrs. Lester was removed by Betty Lester's divorce decree rendered within a few days after the relationship in question had been formed, and thereafter Mr. and Mrs. Lester were perfectly free to marry. The question arises, therefore, as to whether the continued cohabitation of Mr. and Mrs. Lester after the removal of the impediment, albeit without either one of them knowing that the impediment had been removed, cured the defect in the original relationship and caused them to be lawfully wedded at common law. This question presents the real difficulty in the case, and the Examiner answered it in the negative.

In approaching the question just stated it will be recalled that there are three elements which must exist to establish a valid common law marriage in Texas, namely: matrimonial intent, cohabitation, and a holding out of the existence of a marital relationship. The record before the Court establishes the existence of the second and third elements, and the Examiner did not question their existence. He found, however, that there was a fatal absence of matrimonial intent, and that the relationship of Mr. and Mrs. Lester which began meretriciously never

valid common law marriage in Texas, their marital status was not lost when they came to Arkansas, and children born

changed its quality. In this connection the Examiner wrote:

"* * * Also, under Texas law * * * continued cohabitation of a man and woman and their publicly holding themselves out as married will, after the removal of an impediment to their marriage, permit inference of a matrimonial intent and thus give rise to a valid common law marriage. However, in this case, both the wage earner and the claimant were aware at the inception of their relationship of the impediment to a marriage between them * *. Nevertheless, they agreed to live together and did live together under these conditions. Both the claimant and the wage earner were unaware of the decree of March 10, 1959, divorcing Betty Lester and the wage earner, and it was not until after the wage earner's death that the decree came to light. Under the circumstances, no valid common-law marriage between the parties arose at any time after the impediment to the marriage was removed. * * * "

Unfortunately, it is not unusual for a marriage, otherwise valid, to be rendered invalid by reason of an impediment of the existence of which one or both parties to the relationship may be either aware or ignorant. Nor is it unusual for such impediment to be removed during the continuation of the relationship, and one or both of the parties may or may not be aware of the removal.

■ In Texas where one or both parties to what would be a valid marriage but for the existence of an impediment are ignorant of the existence of the impediment and enter into the relationship in good faith, their relationship is styled a "putative marriage," and becomes a valid marriage at common law upon the removal of the impediment, regardless of knowledge on the part of the spouses

to them in this State would be deemed legitimate here.

that the impediment has been removed. Fort Worth & R. G. Ry. Co. v. Robertson, Tex., 103 Tex. 504, 131 S.W. 400; Smith v. Smith, 1 Tex. 621; Curtin v. State, Tex.Cr.App., 155 Tex.Cr.R. 625, 238 S.W.2d 187; Consolidated Underwriters v. Taylor, Tex.Civ.App., 197 S.W.2d 216; Defferari v. Terry, supra; Gorman v. Gorman, Tex.Civ.App., 166 S.W. 123.

■ Moreover, regardless of the good faith of the parties when the relationship is formed originally, if the impediment is removed to the knowledge of the parties, and if they thereafter continue to live together as husband and wife, holding themselves out as such, a matrimonial intent will be inferred, and a common law marriage held to be established. Shelton v. Belknap, supra; Potter v. Potter, Tex.Civ.App., 342 S.W.2d 800.

The instant case, however, does not fit into either of the categories of cases just mentioned. Here, when the parties formed their relationship in Texas on March 1, 1959, both knew that William B. Lester had a living undivorced wife; William B. Lester never learned that he had been divorced; and plaintiff never learned of that fact until after Mr. Lester's death.

■ The general rule which is applied in such situations is stated in 55 C.J.S. Marriage § 36, pp. 882–883, as follows:

"*Where the relationship was meretricious at its inception,* it will be presumed so to continue, in the absence of evidence to the contrary, and in such case the removal of the disability will be ineffectual to create an informal or common-law marriage, unless a new contract is entered into, and this is particularly true where the parties do not know of the removal of the impediment; but, where, the original illicit intention has been abandoned and a matrimonial intention substituted, the removal of the disability will effectuate a common-law marriage. * * *

Where both parties knew at the time they commenced their relationship that one of them was already married and that such marriage had not been terminated, continued cohabitation after the termination of the subsisting marriage does not create a common-law marriage in the absence of a new marriage contract, * * *."

According to case notes appearing in 17 Texas Law Review 223 and in 8 Texas Law Review 239, a majority of the Texas decisions are in accord with the general rule above stated. See e. g. Edelstein v. Brown, 100 Tex. 403, 100 S.W. 129; Brown v. Brown, Tex.Civ.App., 115 S.W.2d 786; Robinson v. Casey, Tex.Civ.App., 272 S.W. 536; United States Fidelity & Guaranty Co. v. Dowdle, Tex.Civ.App., 269 S.W. 119; Cuneo v. De Cuneo, Tex.Civ.App., 59 S.W. 284. The same notes recognize, however, that there are Texas decisions which take a more liberal view, namely Kelly v. Consolidated Underwriters, Tex.Civ.App., 300 S.W. 981, aff'd Tex.Com.App., 15 S.W.2d 229; and Bull v. Bull, 29 Tex.Civ.App. 364, 68 S.W. 727.

In Kelly, supra, an ignorant Negro couple formed a meretricious relationship in Louisiana and lived together sporadically until the man moved to Texas. Subsequently, the woman believing that the man was dead contracted a valid ceremonial marriage in Louisiana. Still later, having learned that her former paramour, Kelly, was alive and well she deserted her lawful husband, and resumed her relationship with Kelly in Texas under circumstances which apart from the fact that she had a living husband would have constituted a valid common law marriage. Shortly after the woman went to Texas to join Kelly, the Louisiana husband died, a fact of which neither the woman nor Kelly was aware. They continued their relationship without change until the accidental death of Kelly in the course of his employment. The woman filed a claim for benefits under the Texas Workmen's Compensation Act claiming to be Kelly's widow, and

her claim was upheld in the cited decisions.

The plaintiff in the instant case cites Kelly, and it is the strongest authority brought forward in support of her position. It should be said, however, that it was found in Kelly that at the time the woman formed her relationship with Kelly in Texas the parties had an actual matrimonial intent and the Court took the view that "because of the sanctity of the marriage relation, a sound public policy impels the law to infer consent 'to have been given at the first moment when the parties were able to enter into the contract.'" (300 S.W. at 982.)

Without undertaking to resolve the conflict, or apparent conflict, between the Texas cases, and assuming without deciding that the Kelly decision states the law of Texas which would be applied today by the Supreme Court of that State to the facts which existed in Kelly, the Court has come to the conclusion, not without some reluctance in the circumstances here present, that Kelly is distinguishable from the instant case, and is not binding authority in favor of plaintiff's position. And the Court has also come to the conclusion that although the Examiner did not discuss the problem in any great detail,[4] his ultimate finding that there was never a valid common law marriage between the Lesters in Texas has adequate evidentiary support and was legally correct.

■ The evidence of record establishes the following controlling facts and circumstances: (1) The illicit affair in Arkansas in 1958, followed by the birth of the first child; (2) the resumption of the illicit relationship on March 1, 1959, with knowledge on the part of both Mr. and Mrs. Lester that he was not divorced and had a living spouse, and without any present matrimonial intent; (3) the lack of knowledge on the part of the Lesters that Mr. Lester had in fact been divorced from his wife, and, indeed, their belief that the contrary was true; (4) the lack of any change in the nature of their relationship, and the absence of anything to show that they actually considered themselves married although they held themselves out as man and wife; (5) the fact that after their return to Arkansas and to the very county in which the divorce had been rendered, they made no effort to discover Mr. Lester's true marital state in relation to Betty Lester. The most that can be said is that Mr. and Mrs. Lester may have had some vague intention to get married at some future time, but even that is not clear, and, in any event, it is insufficient.

Having upheld the Examiner's determination that there was no valid common law marriage in Texas, it becomes necessary to consider the applicability of Ark. Stats.1947, § 61–104, because if it is applicable to either child, that child is legitimate in Arkansas regardless of the former status of Mrs. Lester in relation to Mr. Lester.[5]

■ As indicated, the statute provides that the issue of all marriages

---

4. The Examiner seems not to have taken the question now under discussion as seriously as the Court has taken it, and the Examiner's opinion cites no Texas authority on the effect of the removal of an impediment to an otherwise valid common law marriage. Following the quotation from his opinion set forth above the Examiner cited "SSR–61–47," which is presumably a regulation of the Social Security Administration. The text of the regulation is not set forth in the record before the Court, and the Court has not been able to find such regulation in the Code of Federal Regulations. In any event, the question of the validity of a common law marriage in Texas must be decided in the light of Texas law rather than in the light of Social Security regulations.

5. It has been noted that the Examiner did not discuss section 61–104, and the Court does not have the benefit of the agency's view as to the application of that statute. However, since the facts are essentially undisputed and since the question is one of interpreting and applying a State statute rather than the Social Security Act, the Court feels free to make its own determination of the applicability of the statute without remanding the case for administrative consideration of the question.

deemed null in law shall be considered legitimate. The statute favors legitimacy and should be construed liberally, see Daniels v. Johnson, 216 Ark. 374, 226 S.W.2d 571, 15 A.L.R.2d 1401, and Leflar, op. cit., § 179, p. 346. However, it must not be stretched unreasonably to afford relief in a particular case which may appear deserving or which may appeal to judicial sympathy.

As far as William B. Lester, Jr. is concerned, it would seem rather clear that since he was born prior to the formation of the alleged marital relationship in Texas, he would in no case fall within the terms of section 61–104 which applies to the "issue" of "marriages deemed null in law." The statute presupposes that the parents of the child in question have contracted a "marriage" of some sort, which is for some reason "null in law," and that the child is the "issue" of such "marriage." It does not apply to a child born entirely out of wedlock as was the older Lester child.

Turning now to Sherry E. Lester, who was born in Arkansas following the return of her parents to this State, it may be conceded at once that section 61–104 operates to legitimatize the issue of bigamous marriages. Yocum v. Holmes, 222

Ark. 251, 258 S.W.2d 535; Bruno v. Bruno, 221 Ark. 759, 246 S.W.2d 341; Daniels v. Johnson, supra; Morrison v. Nicks, 211 Ark. 261, 200 S.W.2d 100; Cooper v. McCoy, 116 Ark. 501, 173 S.W. 412; Evatt v. Miller, supra. And the Court will assume that it applies to the issue of a bigamous common law marriage as well as to the issue of a bigamous ceremonial marriage.[6]

But, section 61–104 does not apply to the issue of purely meretricious relationships where no marriage of any kind is shown, Bickford v. Carden, supra; cf. Hodge v. Hicks, 149 Tex. 390, 233 S.W.2d 557, and the Court cannot hold that a relationship, such as that which prevailed between Mr. and Mrs. Lester which was never characterized by any matrimonial intent, rises to the dignity of a "bigamous common law marriage."[7] It was simply an illicit, though open, relationship between a man and a woman. While Sherry E. Lester is the issue of such relationship, she is not the issue of a "marriage" deemed null in law, and section 61–104 does not help her.

Judgment will be entered affirming the administrative determination and dismissing the complaint.

6. Cf. Defferari v. Terry, supra, wherein it was held that the portion of what is now section 42 of the Probate Code of Texas which corresponds to Ark.Stats. 1947, § 61–104, does apply to the issue of bigamous common law marriages.

7. The Court has no difficulty in characterizing as a "bigamous common law marriage" a relationship where actual matrimonial intent exists and at least one of the parties is ignorant of the existence of a prior undissolved marriage which renders the relationship bigamous. But the Court has a good deal of difficulty with the concept of a "bigamous common law marriage" applied to a situation where from the beginning both parties to the relationship know of the existence of a prior undissolved marriage, and consequently can have no real matrimonial intent. It might be noted at this point that as far as matrimonial intent is concerned there is a difference between a ceremonial marriage and a common law marriage. In cases of ceremonial marriage, aside from questions of fraud, mental incompetency, and the like, the law looks no further than the agreement and intent expressed objectively by the parties at the time of the ceremony; subjective and latent intents and reservations are not material. In cases of common law marriage, on the other hand, subjective intent to marry is an essential element of the relationship, and unless at least one party has such intent, the relationship is simply meretricious although the parties may hold themselves out as husband and wife for the sake of deceiving others as to the true state of affairs.