Edward SCHOULTZ, Plaintiff,

v.

Caspar W. WEINBERGER, Secretary of
Health, Education and Welfare,
Defendant.

Civ. A. No. 72-C-585.

United States District Court,
E. D. Wisconsin.

June 4, 1974.

T. Michael Schober, New Berlin, Wis.,
for plaintiff.

David J. Cannon, U. S. Atty. by Joseph P. Stadtmueller, Asst. U. S. Atty., Milwaukee, Wis., for defendant.

## MEMORANDUM DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action brought under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g),[1] and § 1869(b) of the Act, 42 U.S.C. § 1395ff(b),[2] in which plaintiff seeks review of a final decision of the Appeals Council of the Social Security Administration. This matter is pending before the court on cross motions for summary judgment. I grant plaintiff's motion and deny defendant's motion, finding that the decision of the Secretary denying payment to plaintiff was not supported by substantial evidence.[3]

Plaintiff is a resident and citizen of the State of Wisconsin.[4] He received inpatient hospital care from January 20, 1971 to February 11, 1971, at St. Francis Hospital, Milwaukee, Wisconsin. On February 11, 1971, he was transferred to Sacred Heart Rehabilitation Hospital, Milwaukee, Wisconsin. Plaintiff received inpatient treatment at Sacred Heart between February 11, 1971 and May 7, 1971, and incurred a bill for services at that Hospital in the amount of $7,860.40.

Payment for plaintiff's inpatient care at St. Francis Hospital is not in dispute here. Rather, payment of the bill incurred at Sacred Heart Rehabilitation Hospital is the essential question. On May 19, 1971, plaintiff was denied coverage of the Medicare Law for payment of his expenses. On October 4, 1971, plaintiff's request for a reconsideration of this decision was denied. Shortly thereafter, on December 27, 1971, a request for a hearing before the Hearing Examiner was made by the plaintiff's

---

1. Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for the nature of judicial review in matters of this kind. It states in part:

   "Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides * * *. As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *. * * * *"

2. Section 1869(b) of the Act, 42 U.S.C. § 1395ff(b), provides for judicial review of the final decision of the Secretary of the Department of Health, Education, and Welfare when the amount of hospital insurance benefits in controversy is $1,000 or more. It provides in part:

   "(b)(1) Any individual dissatisfied with any determination under subsection (a) as to—
       *       *       *       *       *
   "(C) the amounts of benefits under part A (including a determination where such amount is determined to be zero) shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 205(b) [42 USCA § 405(b)] and to judicial review of the Secretary's final decision after such hearing as is provided in section 205(g) [42 USCS § 405(g)].
   "(2) Notwithstanding the provisions of subparagraph (C) of paragraph (1) of this subsection, a hearing shall not be available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $100; nor shall judicial review be available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $1,000."

3. Summary judgment motions are actually not the proper procedure in actions of this kind. The applicable statutory provisions limit judicial review to an examination of only the pleadings and the transcript of the record. I have considered both the pleadings and the transcript of the record and have concluded that the decision of the Appeals Council is unsupported by substantial evidence.

4. Counsel for the plaintiff has notified the court that plaintiff is now deceased.

wife, Mrs. Margaret H. Schoultz. On May 26, 1972, the Hearing Examiner determined that plaintiff was not entitled to payment under provisions of the Social Security Act. Plaintiff's wife appealed this decision to the Appeals Council of the Social Security Administration, and on August 29, 1972, the Appeals Council affirmed the decision of the Hearing Examiner, thereby making the Hearing Examiner's decision the final decision of the Secretary of Health, Education, and Welfare. Plaintiff commenced a civil action in this court in compliance with § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The nature of judicial review authorized by § 1869b, 42 U.S.C. § 1395ff(b), is governed by the provisions of § 205(g) of the Act, 42 U.S.C. § 405(g). Section 205(g) states: " * * * The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *." Accordingly, the federal district court shall not try the case *de novo* and shall not modify or reverse the respondent's decision if the findings are supported by substantial evidence. Universal Camera Corp. v. N.L.R.B., 340 U. S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Heikes v. Fleming, 168 F.Supp. 675 (S.D.Ill.1958), aff'd 272 F.2d 137 (7th Cir. 1959). Substantial evidence has been defined to mean "such relevant evidence that a reasonable man would accept as adequate to support a conclusion." Reading v. Richardson, 339 F. Supp. 295, 299 (E.D.Mo.1972). See also Johnson v. Richardson, 336 F.Supp. 390, 392 (E.D.Pa.1971), and Weir v. Richardson, 343 F.Supp. 353, 355 (S.D.Iowa 1972).

Turning to the specific facts of the present case, plaintiff entered Sacred Heart Rehabilitation Hospital on February 11, 1971. He was 69 years old at that time and was in poor health. He was admitted there as a transfer from St. Francis Hospital. Prior to his admission to St. Francis, the plaintiff had had a series of strokes and heart attacks (Tr. p. 8). He had also undergone three major operations: cataracts had been removed from both eyes, a right inguinal hernia had been removed, and an operation had been performed to cure a bladder infection. In addition, about two years prior to his admission to Sacred Heart he had developed partial paralysis of his right side (Tr. p. 9), and about one year prior to his admission, plaintiff had fractured his right femur and right tibia (Tr. p. 9). According to the testimony of his wife and daughter, plaintiff was completely incapacitated and "at a standstill" (Tr. p. 8) before his admission to St. Francis Hospital. At St. Francis Hospital, plaintiff received treatment for pain in his leg, hip, and knee (Tr. pp. 8–9).

Plaintiff was admitted to Sacred Heart with the diagnosis of osteo-rheumatoid arthritis in his right hip and knee, spondylosis affecting his cervical spine, an old fracture of his right hip with shortening of the leg, and atrophy of the extrinsic muscles of both hands (Tr. p. 10). He was allegedly in persistent pain at that time (Tr. p. 9) and was reported to have been unable to walk without assistance (Tr. p. 10). He required assistance with transfer activities Tr. p. 11), oral medication, assistance with bathing, intramuscular injections of vitamin B–12, and physical therapy (Tr. p. 43). His physical therapy consisted of whirlpool baths, massages, and muscle strengthening exercises (Tr. p. 43). Plaintiff was apparently extremely nervous and apprehensive during all therapeutic activities (Tr. p. 61). It was reported that he felt his problems could be corrected with surgery and that the therapeutic program was therefore a waste of time (Tr. p. 65). At one point he stated that he really did not care if he improved (Tr. p. 69). Perhaps as a consequence of this attitude, claimant, despite the efforts of those involved, "showed only slight improvement" (Tr. p. 11) and was described as having "little rehabilitative potential" (Tr. p. 43).

The Secretary claims that payment to plaintiff is barred because the plaintiff's expenses were for "custodial care." Sec-

tion 1863(a)(9) of the Act, 42 U.S.C. § 1395y(a)(9), states that "(a)  *  *  * no payment may be made  *  *  * for any expenses incurred for items or services  *  *  * (9) where such expenses are for custodial care." The phrase "custodial care" is not defined in the Social Security Act. The absence of such a definition is the reason for the present controversy.

The Secretary takes the position that the intent of Congress in passing the Social Security Act was to provide protection against the costs of those injuries and illnesses requiring the continued attention of trained medical and paramedical personnel as opposed to those requiring supportive care.[5] The determination of whether an individual requires the attention of trained medical personnel is made on the basis of whether or not the individual's condition warrants the provision of "skilled services." The Secretary defines a "skilled service" as one in which the safety of the patient is at stake, a medically desired result is the goal, and performance by a trained medical person is required to achieve the goal.

■ I find no justification in either the express terminology or policy of the Act for the Secretary's restrictive definition of "custodial care." The Medicare Act was passed to not only make benefits available to defray hospital costs but also to alleviate the high costs

of treatment in post-hospital extended care facilities. The social security legislation is remedial and has therefore been construed liberally to effectuate its stated purpose. See Walston v. Gardner, 381 F.2d 580 (6th Cir. 1967); Sowell v. Richardson, 319 F.Supp. 689 (D.S.C. 1970).

■ As I stated previously, the Secretary's findings are conclusive on the reviewing court if they are supported by substantial evidence. Although this may be the case, the reviewing court is not required to accept the Secretary's conclusions of law. Reading v. Richardson, supra, at 300; Wolf v. Gardner, 386 F. 2d 295 (6th Cir. 1967); Lester v. Celebrezze, 221 F.Supp. 607 (E.D.Ark.1963); Martin v. Ribicoff, 195 F.Supp. 761 (E. D.Tenn.1961). Furthermore, if the Secretary fails to employ the correct legal standard in arriving at his conclusion, the court may overrule his findings. Reading v. Richardson, supra, at 300; Sowell v. Richardson, supra. If the Secretary applied erroneous legal standards, it follows that his resolution of the factual issues and inferences drawn therefrom will probably be erroneous. Bremer v. Richardson, 347 F.Supp. 465 (D. Neb.1972).

In Sowell v. Richardson, supra, the Secretary attempted to employ a definition of "custodial care" similar to the one urged here. The court found the proposed definition to be fatally narrow

---

5. The Hearing Examiner stated the following concerning determination of whether or not care was "custodial":

"In considering whether services rendered to an inpatient are skilled medical or custodial, attention must be focused primarily upon the specific type of service and whether it constitutes care which was not intended to be covered.  *  *  *

"Covered inpatient hospital care is care provided to the acutely ill or disabled, who, because of the severity of their condition, require the constant availability of physicians, skilled medical services and complex equipment ordinarily found only in a hospital. Payment of hospital insurance benefits for inpatient rehabilitation hospital services may be made when an individual requires sufficiently frequent and intensive rehabilita-

tion services and nursing care for a condition which demands the availability of physicians, a specially trained staff of paramedical personnel and the complex medical equipment ordinarily found only in a rehabilitation hospital.

*     *     *     *     *

"Many individuals who require only custodial care may need occasional physician visits for assessment of their medical status so that a medical decision may be made as to whether changes are required in the type of care which they are receiving. Nevertheless, occasional visits by a physician to a patient do not change the custodial character of the care when the primary purpose of the total care provided is to assist him to meet the activities of daily living." (Tr. pp. 12–13)

in that it focused on service actually rendered the claimant and did not consider the totality of circumstances. It explained at 691–692:

"* * * A sensible nontechnical approach to interpretation of this chapter is necessary in order to give effect to the purposes of the Act and to afford equitable treatment to those seeking its benefits. (See Pasquale v. Cohen, 296 F.Supp. 1088, (D.R.I. 1969)).

"* * * It was never intended by Congress that the condition of the insured, treatment that might at any time be necessary, and the pain and discomfort attending inadequate or unprofessional care or lack of care not be considered together with treatment actually provided in determining whether extended care services are justified. *Every aspect of the plaintiff's physical condition must be considered in making the determination.* Treatments immediately required are of course a major factor. However, even if no treatment were required the condition of the insured might be so unstable or unsatisfactory, as to require the extended services contemplated by the statute. * * *" (Emphasis added.)

In several subsequent cases, Reading v. Richardson, supra; Pippin v. Richardson, 349 F.Supp. 1365 (M.D.Fla. 1972), and Bremer v. Richardson, supra, the same underlying infirmity was found to exist in the definition employed by the Secretary. The definition employed by the Secretary in the instant case does not appear to differ in any material way from the definitions which were held to be improperly narrow in each of the above-cited decisions.

[■-■] I therefore find that the services furnished plaintiff were not merely custodial or supportive but that they were clearly responsive to plaintiff's medical needs. The Secretary's determination was based on the application of a test that improperly failed to consider the totality of the plaintiff's physical condition. Without attempting to set out a definitive test to be employed in other cases, the evidence in this matter overwhelmingly convinces me that the care given plaintiff was of the type meant to be compensable under the Social Security Act. I believe that, by itself, the therapeutic treatment plaintiff received at Sacred Heart clearly indicates that plaintiff both needed and received more than mere custodial care. His condition was clearly very unstable and unsatisfactory. The evidence additionally indicates that plaintiff had extreme difficulty moving about. The fact that such therapy did not provide the results that were hoped for does not weaken plaintiff's position. Recovery under the Act is not limited to those who recover physically. In fact, plaintiff's poor attitude towards treatment further indicates that skilled care was needed to obtain results. See Bremer v. Richardson, 347 F.Supp. 465, 469 (D.Neb.1972).

My decision is not based on this alone. It is not necessary to repeat plaintiff's medical history or condition at the time in question in order to realize that he was a very ill man. I find the Secretary's procedure to have been defective in that he failed to consider the overall medical history of the plaintiff. Had he done so, in addition to considering the therapeutic treatment afforded the plaintiff, it would have been impossible to conclude that plaintiff received merely custodial care.

For the reasons stated above,

It is ordered that plaintiff's motion for summary judgment be and it hereby is granted.

It is further ordered that defendant's motion for summary judgment be and it hereby is denied.

It is further ordered that judgment be entered for the plaintiff and against the defendant in the sum of $7,860.40.